Anderson, J.,
delivered the opinion of the court.
The sale which is sought to be set aside in this case was made by commissioners under a decree of the circuit court of Rockingham county, reported to the court and confirmed. The sale was made upon full notice to the public, and upon ' the terms required by the decree, and. was conducted by the commissioners with fairness, and evidently with the view of getting the best price for the land it would command.
They first sold Dr. S. B. Jennings’ life interest in the twenty-five acres of land, which had been assigned to the heirs of Mrs. Ann Jennings, and which was purchased by her children, and the sale to them was confirmed, and there is no objection made to its confirmation. The tract of one hundred and ninety-three acres of cleared land, consisting of a tract of one hundred and forty-three acres, and a tract of fifty acres, known as the Home farm, upon which the mill is situated, were offered together, and were knocked off to Dr. S. P. H. Miller, the agent of Mrs. Sallie P. Miller, Dr. Joseph H. Wolfe and Charles W. Harnsberger, at the price of $25 per acre, with the understanding that they would divide it betweeñ themselves, and each one comply with the terms of the sale as to their respective parcels, as they should agree amongst themselves. Accordingly, Sallie C. Miller took 111 acres, 3 roods and 37 poles thereof, at $31.51 per acre, amounting to $3,528.70, and complied with the terms of the sale as the purchaser thereof; Dr. Wolfe took 20 acres off the east side of the 193 acres, at the price of $16 per acre, amounting to $320, and complied with the terms of the sale as the purchaser thereof; and C. W. Harnsberger took 61 acres and 3 poles off the south side of the *458 193 acre tract, at the price of $16 per acre, amounting to $976.30, and complied with the terms of sale as the purchaser thereof—the whole aggregating four thousand eight hundred and twenty-five dollars: the sum for which it sold at $25 per acre. This sale was reported to the court and confirmed.
There was another tract sold, which, on account of the insufficiency of the security, in the opinion of the commissioners, was not confirmed; and there was a tract sold to George W. Harnsberger which was not confirmed. There is no question upon this appeal as to the correctness of the decree in respect to the said two tracts, and it need not be further noticed in that regard.
The commissioners first offered the 193 acres as a whole, and received a bid of $24 an acre—$4,632. They held this bid, and then offered the mill with ten acres and water rights, and the residue of the 193 acres, separately. For the latter the highest bid they received was $19 an acre, and for the former—the mill with ten acres and water rights—$700. They then offered the land in two other parcels; and the bids not together equaling the highest bid which had been made for the tract as a whole, they again offered the 193 acre tract as a whole at $24 an acre, when it was run up to $25 an acre, at which it was knocked off, as before stated.
Where two or more persons are desirous of acquiring different parcels of a tract of land, which is offered for sale at public auction by commissioners, under a decree of court, with respect to the convenience and advantage of the situation of the several parcels to their own lands respectively, it is not unlawful or improper for them to bid for the whole tract where it is offered to the highest bidder, with the understanding, that they will divide it between themselves, and how they will divide it, if they should become the purchasers, and that each one shall be severally bound to comply with the terms of purchase as to his own part, as agreed between themselves.
*459 And when the sale of it as a whole is suspended by the commissioners, and the same is offered in parcels, with the view of getting a better price for it, those who bid for as a whole, with an understanding to divide it amongst themselves, are not bound to bid for it when so offered, provided they do nothing to repress the bids of others, And when the commissioners, finding that it will not bring as much when sold in parcels as it will bring offered as a whole, offer it again as a whole, it is entirely competent for the said parties to bid for it, and to enter into the competition for its purchase as a whole, though they refrained from bidding for it when offered in parcels, with the understanding that they will divide it among themselves, and that each one will be responsible for the purchase of his part, provided such arrangement is fairly made, and they do nothing to repress the bidding of others. We can conceive of no good reason, when a tract of land is offered for sale, why parties who bona fide wish to purchase different parts of the same, and neither of whom wish to purchase the whole, may not agree to unite in the purchase of the whole, and then divide it between themselves, or why they should be required to bid for it in parcels, when the decree, as in this case, does not require it to be sold in parcels.
Where the land was put up for sale in parcels, there was nothing to prevent any of those present to bid for either parcel; and Hiram Kite, who, we concur in the opinion of the circuit court, is the prime mover in this proceeding to set aside the sale, and to reopen the bidding, had every opportunity to bid for either parcel, and to have purchased it, if he had been willing to have bid more than others were willing to pay for it, and others present were not willing to bid as much for the several parcels as would amount in the aggregate to the price at which the sale of the tract as a whole had been suspended, and consequently .the commissioners offered it again as a whole *460 to the highest bidder, and Dr. Miller, for and on behalf of the parties before mentioned, being the highest bidder the tract of 193 acres, the'same was knocked off to him.
The affidavit of Joseph H. Kite, as to what J. G. H„ Miller sa^ t° him, is hearsay, and is inadmissible as evidence against the appellees. And the same remark is applicable to the affidavit of Samuel C. Naylor, as to what William H. Marshall said to him. It is not evidence for the same reason. The affidavit of Hiram Kite, of the conversation between him and Dr. S. P. H. Miller, after the land was knocked off to said Miller, does not comport with what said Miller and C. W. Harnsberger testify as to that conversation, nor with the reply made by Dr. Miller to the inquiry of said Hiram Kite while the property was-being cried at $24 an acre—that is, “ Who was in with him ?”—that “ he was bidding for his wife, C. W. Harnsberger and J. H. Wolfe”—nothing said about J. G. Miller or William H. Marshall being in with him. If they were, there is no reason why he should not have disclosed the fact as to them, as well as to others; and the same statement, he testifies, he made to the commissioners before the sale began, that it was his intention to bid for his wife, C. W. Harnsberger and J. H. Wolfe—nothing said about J. G. Miller or William H. Marshall. And this statement, confirmed by the commissioners in their report; that the 193 acres of land was knocked off to Dr. S. P. H. Miller as agent of Mrs. Sallie C. Miller, Dr. Joseph H. Wolfe and . Charles W. Harnsberger, with the understanding that each wanted certain parts or parcels of the same, &c.; and the sale was reported as made to these parties severally of parcels of the 193 acres, which included the mill property—part of it reported as sold to J. G. H. Miller or William H. Marshall. If such was the fact, it could have been proved by them. They were competent witnesses, and the appellant might have taken their affidavits or de *461 positions. Certainly proof of their hearsay declarations, upon such vague and unsatisfactory evidence that they were associated or united with Dr. Miller in the purchase, not be relied on against Mrs. Sallie C. Miller, Dr. Joseph H. Wolfe and C. W. Harnsberger, as evidence against them to set aside a sale, which the commissioners reported to the court was made to them, and which was confirmed by the court, and to the confirmation of which no objection was made by the said J. G. H. Miller and William H. Marshall. But suppose that it had been agreed by them and Dr. Miller, that if he purchased the whole they would take the mill and ten acres of land, part and parcel, of the purchase, it was an agreement which they had a right to make,and could not vitiate the sale; the sale having been for the full value of the property, according to the decided preponderance of the testimony, and there being no evidence or even an imputation of fraud or unfairness.
But the appellant, John H. Roudabush, objected to the confirmation of the sale of the Home farm—the 193 acre tract—and offered to the court a bid of 10 per cent, advance upon the price at which it was knocked off to Dr. Miller, agent as aforesaid, if the land should be again exposed to sale, and tendered as his sureties Hiram A. Kite and William E. Kite, who in fact signed his petition. There was no objection to the sufficiency of the security. But the court declined the offer and confirmed the sale ; and assigned as its reason, “ that the evidence proves that the land sold for its fair value, and that H. A. Kite, the real party who put in an advance bid, was present at the sale, and was then just as able to purchase as he is now. The upset bid, nominally made by Roudabush, ought not to be accepted, because it is proved that he owns no property except what is exempt by law, and as a consequence will not be able to comply with the terms of salé, if he should become the purchaser. Kite is the real party, and Roudabush, who is wholly irresponsible, is his surety. *462 Whether a resale of property should be directed depends upon the circumstances of the particular case. If sale was fairly made, and the terms of sale have been comP^ed with by the purchaser, it ought not to be set aside, except upon the strongest grounds. The purchaser is frequently subjected to considerable inconvenience in making his arrangements to purchase, and has the right, after he has made the purchase at a fair price, and has complied with the terms of the sale, to expect, the court to confirm the sale.” The foregoing reasons assigned by the court for its ruling are, we think, in the main, sound. Its refusal to accept the offer of an advance bid, to set aside the sale, and reopen the biddings, is assigned as error, and the only remaining ground, and in fact the main ground upon which the appellant seeks to reverse the judgment. It raises the question, whether the court is bound to set aside a sale made by commissioners under its decree, when an advance bid is offered and well secured ? The practice England was. formerly, to refuse a confirmation of the sale, and to reopen the biddings, whenever an advance bid was made of sufficient amount and the money deposited or well secured.
In Duncan & als., trustees, v. Dodd, 2 Paige’s R. 100, the chancellor said, by the practice of the English court of chancery it is almost a matter of course to open the biddings on a master’s sale, before the confirmation of his report, upon the offer of a reasonable advance on the amount bid and the payment of the costs and expenses of the purchaser. As a general rule, an advance of 10 per cent, is sufficient to authorize a resale. * * The English practice as to opening biddings has not been adopted in this state (New York), and it is probably not desirable that it should be introduced here. In Williams v. Atkenborough (Tur. & Rus. R. 70), Lord Eldon says, “ During a period of nearly half a century which I have passed in this court, and in which Lord Apsley, Lord Thurlow, the *463 lord’s commissioners, with Lord Loughborough at their head, then Lord Loughborough as chancellor, and after him the lord’s commissioners, with Chief Baron Eyre their head, have presided, I have heard one and all of them lament that the practice of opening biddings was ever introduced.” And the chancellor goes on to say, “ If such are the opinions of English chancellors as to the dangerous tendency of the practice in that country, where real estate has, comparatively, a fixed and certain value, a resale ought not to be granted here except in very special cases.” And again he says, “ It is essential to the interests of those whose property is thus sold, that purchasers should continue to retain full confidence in the safety of such purchases; and that they will not, as a matter of course, be disturbed, merely because a good bargain has been obtained.”
From a long experience, the English government became so well satisfied of the evils resulting from this practice, that it has been abolished by an act of the British parliament during the present reign. 30 and 31 Viet. c. 48, cited 1 Suyd. Vendors, p. 161 note (a).
Chancellor Kent says, “ The English practice of opening biddings, on a sale of mortgaged premises under a decree, does not prevail, to any very great extent, in this country.” (4 Kent. Com., p. 191-2.)
Judge Lomax says, “We are not warranted by any reported decision of the highest tribunal’in Virginia, to pronounce positively what is the course of practice in this particular in this commonwealth.” And he cites the opinion of Chief Justice Marshall, in Ross v. Taylor, to the effect that it is not a doctrine of equity, but a practice established by particular courts. But in Virginia he says, “the courts have established a different practice. The purchaser is entitled to his purchase, and cannot recede from it. The benefit or loss is largely his, and it requires some impi’opriety, which vitiates the transaction, to set it *464 aside.” Since the above was written by Judge Lomax there has been some expression of opinion in this court on the subject. In Effinger v. Ralston & als., 21 Gratt. 430, Judge Moncure, after stating what were some of the rules of the English practice on this subject, expresses the opinion that the same practice and rules substantially exist in this state, though not in all the states of the Union. But he said they did not apply to that case. The question was not involved in that case, and was not decided.
In Hudgins v. Lanier, Bro. & Co., 23 Gratt. 494, an advance bid was tendered. But the circuit court declined it, and confirmed the sale, and the decree was affirmed by this court. Judge Staples delivering the opinion of the court said : “ It is obvious that this is no such substantial and material advance upon the price obtained by the commissioners as would justify the court in annulling the sale already made, and exposing the creditors to all the delays and hazards attending a resale. There is no doubt the property was sold at a very advantageous price; the sale was fairly conducted, and the terms of the decree fully complied with. * * * It would be a bad precedent, leading to most pernicious consequences, to vacate a sale made under such circumstances, because the owner may be able to find some one veiling to advance a small sum in excess of the commissioner’s sale. Such has not been the practice in Virginia.”
It has never been decided by this court how far the English practice has been adopted in this commonwealth. It has been held that the commissioner of sale is the agent of the court, and that his proceedings are subject to revision and control, and whether the court will confirm the sale will depend upon the circumstances of the particular case. It has never been held that for mere inadequacy of price the court should set aside the sale. That question has not been decided by a full court. Curtis v. Thompson, 29 Gratt. 474. “If there is reason to believe that fraud *465 or mistake has been committed, to the detriment of ’ . . owner or purchaser, or that the officer conducting the sale has been guilty of any wrong or breach of duty to injury of the parties interested, the court will withhold a confirmation.” Brock v. Rice & al., 27 Gratt. 812. Judge Staples speaking for the whole court in that case, said, “ The court, however, in acting upon a report of sale, does not exercise an arbitrary but sound discretion in view of all the circumstances. It is to be exercised in the interest of fairness, prudence and with a just regard to the rights of all concerned. That is not done when no respect is had to the rights and interests of the purchaser. That is not the case when the court seeks to extort every dollar it can get from the purchaser, and refuses to confirm a sale fairly made, because he has gotten a good bargain.
In a proper case, where it would be just to all the parties concerned, this court may be understood as having sanctioned a practice in the circuit courts, in the exercise of a sound discretion, of setting aside a sale made by commissioners under a decree, and reopening the bidding upon the offer of an advanced bid of sufficient amount deposited or well secured; and to that extent the former English practice has been allowed in this state. But it has never been held that it is imperative upon the courts to set aside the sale, and reopen the bids. It is a question addressed to the sound discretion of the courts, subject to the review of the appellate tribunal, and the propriety of its exercise depends upon the circumstances of each case, and can only be rightfully exercised when it can be done with a due regard to the rights and interests of all concerned—the purchaser as well as others. Where the sale has been fair and for a fair price, it should never be set aside, when there is good reason to believe that the upset price has been offered to gratify ill will or malice towards the purchaser.
In this ease the decided preponderance of evidence proves that the land in question sold for a fair price, at a *466 faii- sale; that John A. Roudabush, the appellant, had really . 5 . . . .. , , , . no interest in setting it aside; that though, at one time, a of Dr. Jennings, the judgment in his name was for use 0f another ; but if the debt were still due to . , him, that the prior hens were greater in amount than any price for which the land could be resold, upon any reasonable calculation, and would leave nothing to be applied to his judgment; that he was not the owner of any property over and above his homestead, or what he would be entitled to hold under the poor law, and was wholly unable to take the land at his advanced bid and pay for it, and that the advanced bid he offered of 10 per cent, is the precise amount which Hiram Kite threatened Dr. Smith he would offer, and set aside the sale to him, if he did not let him have fifty acres of the land he had purchased, and is ■ostensibly surety for Roudabush in the offer he made. We are of opinion that the circuit court was warranted in its conclusion that the offer was made for Hiram Kite, and that he was really the principal, and the appellant,'though nominally the principal, was really surety, and that it was merely a contrivance to defeat the sale, which had been fairly made and for a fair price, and the purchasers were entitled to their bargain, and that the circuit court was right in rejecting the offer of an advanced bid and confirming the sale. We are of opinion, therefore, to affirm the decree, with costs.
Móncure, P., concurred in many of the views expressed in the opinion of the court and in the decree; but he thought the English practice was settled, and that was our law, and can only be changed by legislation.
Decree affirmed.