[S. F. No. 2271. Department One.—July 22, 1902.]

LAWRENCE DUNN, Administrator, etc., Respondent, v. LAWRENCE DUNN et al., Respondents; H. E. BOTHIN, Purchaser, Appellant.

PARTITION—ORDER REFUSING TO CONFIRM PART OF SALE—APPEAL BY PURCHASER.—An order refusing to confirm part of a sale in a partition suit, in so far as relates to a particular purchaser, is appealable as an order made after final judgment; and such purchaser is a party aggrieved, who is entitled to appeal from such order.

ID.—RIGHTS OF PURCHASER AT PARTITION SALE—CONFIRMATION—LEGAL DISCRETION.—The highest bidder at a judicial sale in a partition suit assumes certain obligations which he must discharge, and acquires certain legal rights which are to be as much protected and enforced as the rights of other persons. He is entitled not only to ask, but to have, confirmation of the sale, if there is no valid reason in law for setting aside the sale; and the court has no arbitrary power to confirm, or refuse to confirm, but only a sound legal discretion, which must be exercised with a just regard to the rights of all concerned.

ID.—INADEQUACY OF PRICE—VALUE AT TIME OF SALE.—It seems that mere inadequacy of price is not ground for avoiding a judicial sale, unless it is so gross as to justify an inference of fraud, or to shock the conscience. But an inconsiderable difference in value will not justify a refusal to confirm the sale; and the court, in determining the question, must look to the value of the property at the time of the sale, and not at the time when the question of confirmation is before the court, unless these periods so nearly coincide as to justify the presumption that no change in values has taken place. If there is any increase in value, the purchaser is entitled to the benefit thereof.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to confirm a sale of real estate.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bishop & Wheeler, and L. M. Hoefler, for Appellant.

Mere inadequacy of price alone, without any unfairness or collusion, or clear proof of very gross inadequacy, affords no ground for refusing to confirm a partition or other judicial sale.   (Freeman on Cotenancy and Partition, 2d ed., secs. 544-545; 17 Am. & Eng. Ency. of Law, pp. 796-797; 2 Beach on Modern Equity Practice, sec. 824; Rorer on Judicial Sales, 2d ed., secs. 549, 551; *Allen* v. *Martin,* 61 Miss. 78, 85-87; *Lefevre* v. *Laraway,* 22 Barb. 167, 173; *Howell* v. *Mills,* 53 N. Y. 322, 326; *Comstock* v. *Purple,* 49 Ill. 158, 167, 168; *Central etc. R. R. Co.* v. *Creed,* 70 Cal. 497, 501; *Graffam* v. *Burgess,* 117 U. S. 180, 191; *Pewabic etc. Co.* v. *Mason,* 145 U. S. 349; *Fidelity etc. Co.* v. *Roanoke etc. Co.,* 84 Fed. Rep. 752, 755, 756; *Gardiner* v. *Schermerhorn,* Clarke Ch., 101; *Carson* v. *Ambrose,* 183 Pa. St. 88, 89, 90; *Swires* v. *Brotherline,* 41 Pa. St. 135;[1] *Brittin* v. *Handy,* 20 Ark. 381.[2]) There is no proof here of such gross inadequacy of price at the time of the sale as to justify a refusal to confirm the sale.

J. D. Sullivan, John W. Bourdette, and P. F. Dunne, for Respondents.

A sale in partition, until it is confirmed, is of no effect. (Rorer on Judicial Sales, 2d ed., secs. 106, 399; *Hamilton Estate, Hay's Appeal,* 51 Pa. St. 58; *Taylor* v. *Gilpin,* 3 Met. (Ky.) 544, 546; *Mason* v. *Osgood,* 64 N. C. 467.)   The court properly exercised its discretion in ordering a resale, and that discretion should not be disturbed.   (*Lloyd* v. *Lloyd,* 61 Iowa, 245; *Hale* v. *Clauson,* 60 N. Y. 341.)

Dinkelspiel & Gesford, for Lawrence Dunn, Administrator, Respondent.

Edgar D. Peixotto, for Margaret Detels, Respondent.

[1] 80 Am. Dec. 601, 603.

[2] 73 Am. Dec. 497, 516, and cases therein cited.

Eugene W. Levy, and Andrew G. Maguire, for I. H. Jacobs, Respondent.

Eugene F. Bert, for John O. Dunn, Guardian of Cornelius C. Dunn, an Incompetent Person, Respondent.

THE COURT.—Action in partition. Thomas F. Dunn, in his lifetime, brought the action, November 29, 1897, praying partition of certain real property situated in the city of San Francisco; issue was joined, the cause tried by the court, and on March 21, 1898, an interlocutory decree was duly made and entered, adjudging that the then plaintiff and defendants Lawrence, William, Cornelius, and Henry Dunn, and I. H. Jacobs were tenants in common of the property, and defining their several interests therein; that defendant Mullen began an action in 1896 against Cornelius for six thousand dollars, and obtained a lien by attachment on his interest in said property, which said suit is now pending, and said lien is still subsisting; that, November 10, 1897, Henry executed a mortgage to defendant Detels, to secure the payment of three hundred dollars, and said mortgage debt is unpaid, and is a valid lien on said property; that the whole of said property is so situated that an actual partition cannot be made without great prejudice to the owners thereof, and a sale is necessary, and that all parties have agreed to the appointment of a single referee "for the purpose of making sale in partition"; that there were no other subsisting liens on said property than as shown above; that G. H. Umbsen be and he is hereby appointed referee, with authority to sell said property at public auction to the highest bidder for cash, upon notice given, and "the publication of said notice shall be in the same manner and for the time required for the sale of real property under execution." The decree directed the referee "after making a sale of said real property . . . to report to the court his proceedings thereon, and upon the confirmation of the sale of said real property by this court, and the payment of the purchase price therefor, said referee is authorized to execute a deed or deeds of the real property sold to the purchaser or purchasers." The referee was directed to pay into court all moneys arising from the sale, the costs and expenses and attorney's fees to "abide the final determination and judgment of this court herein"; the residue to be paid to the

parties and in the shares as directed by the decree, except
that the share of Cornelius, or to John Dunn, as guardian of
his person and estate, was to be subject to the lien of defendant
Mullen, and the share of Henry was to be subject to the lien
of defendant Detels. In each of these cases the allotment was
to abide the final judgment in the actions pending against
each of said distributees. There were four separate tracts
of land. Thomas Dunn died October 16, 1898, and plaintiff
was substituted as administrator of his estate. The referee
proceeded to sell as directed, and no question arises as to the
regularity of his proceedings. In his return it appears that
he advertised the sale by handbills, posters, and other ways,
and by published notices in a number of papers; the sale was
noticed for May 9, 1898, at the auction-rooms of G. H. Umbsen
& Co., in said city, on which day, receiving no bids, and being
unable to sell the property, the sale was again duly advertised
for September 12, 1898, at the same place. The land firstly
described in the decree was then sold to Andrew Downey for
$3,400; the land secondly described was sold to William Giselman
for $6,600; the land thirdly described was sold to appellant,
H. E. Bothin, for $15,500; and the land fourthly
described was sold to Agathe Villegia for $1,300. Each
purchaser paid ten per cent deposit. The report, with accompanying
affidavits, and the petition for the approval of the
court of the proceedings were filed March 20, 1899. Plaintiff
and defendants William and Henry Dunn, and John Dunn,
as guardian of the person and estate of Cornelius Dunn, an
incompetent, and a defendant herein, filed objection to confirmation
of the sale of the several tracts, alleging that the
tract sold to Downey for $3,400 is of the value of $6,000,
the tract sold to Giselman for $6,600 is worth $9,000, the tract
sold to Villegia for $1,300 is worth $2,500, and the tract sold
to Bothin for $15,500 is worth $25,000; that these several
sums for which the property was sold were inadequate, and
on this ground alone asked that the sales be not confirmed.
No objection was made to the sale until it came up for confirmation.
The hearing of the report was had on March 24,
1899, six months after the sale. Referee Umbsen testified that
he had been in the real-estate business in San Francisco for
fifteen years, and was familiar with values of real estate;
that he used his best exertions to attract customers and pur-

chasers at the sale; that the sale to Bothin was for a price the highest and best obtainable. "Said referee upon being asked the question, Was the sum of $15,500 the fair value of the property at the time of the sale? answered that that was the best price he could obtain at the time; that it was a bad time to sell real property; that there was not much demand for real property then, and it was difficult to sell it, owing to the war excitement." Witness Schadle, an experienced real-estate agent, testified that, in his opinion, "the sum of $15,500 was not the fair value of the property at the time of the sale; that while he did not consider the property worth $20,000 at the time of the sale, still it was worth considerably more than $15,500 at that time, but the exact figure he would not attempt to state, owing to the lapse of time between the date of the sale and the giving of his testimony." Witness Sontag, a real-estate agent of experience, testified that, "in his opinion, the lot of land sold to Bothin for $15,500 is worth the sum of $22,500; that the values, generally speaking, of real estate had appreciated considerably since the twelfth day of September, 1898, the date of the referee's sale, and that, in his opinion, the said sum of $22,500 was now the value of said lot of land, and that he could obtain said sum for the same." He further testified that "at the time of the sale the property was worth more than $15,500, but owing to the period of time intervening since the sale he was not prepared to testify to the exact value in his opinion at that time." This was all the evidence introduced, and on April 3, 1899, the court made a minute order confirming the sale of the lots firstly and secondly described in the decree, but ordered that the other lots described be not confirmed, and ordered a resale as to said lots. A decree was entered April 20, 1899, to carry out this minute order directing how the funds derived from the confirmed sale should be distributed, and making some other provisions, and directing a resale of the other lots.

Bothin appeals from so much of the decree as ordered that the sale to him be not confirmed, and he also appeals from the minute order. Exception was taken to the minute order of April 3, 1899, on the ground that there was no evidence showing the land sold to appellant was of any greater value than $15,500, and that this sum was its full and fair value at the

time of the hearing of the report and at the time of the sale, and was the best price obtainable; that the said order "was not within the exercise of sound discretion by the court," and on similar grounds it was specified that the said decree was against law.

1. Respondents make the objection that the order is not appealable, and, if it be, Bothin is not a party aggrieved by such order so as to entitle him to appeal therefrom.

The point seems to be that in neither subdivision 3 of section 939, nor in subdivision 2 of section 963 of the Code of Civil Procedure, as amended in 1899 (Stats. 1899, p. 7), is it provided that an appeal can be taken in partition proceedings from an order refusing to confirm a sale of property; that the appeal—and that only in section 939—is allowed as to the reports of referees as provided in section 763 of the Code of Civil Procedure, and those cases appear to apply only to partitions in kind. Appellant replies that the right of appeal need not rest on these provisions at all; that the order or judgment appealed from is either "a special order made after final judgment," or "a final judgment," or order, and in either case an appeal therefrom is expressly authorized by both sections 939 and 963. We think the case of *Hammond* v. *Gailleaud*, 111 Cal. 206,[1] is authority for appellant's contention that the so-called interlocutory decree may be regarded as a final judgment, and for the reasons given in that case; and that the order, or judgment, denying the confirmation of the sale was therefore "a special order after final judgment," from which an appeal is given by section 939, subdivision 3, and by section 963, subdivision 2. In the case above cited the defendant was sued to recover the difference between his bid and the sum obtained on a resale of the property resulting from his refusal to pay his bid. Defendant failed to appeal from the order confirming the sale, and the question was whether the order was "a special order made after final judgment" and appealable. The court held that it was such an order; and it was further held that "if the decree did not become final until the sale was confirmed, it then became final, and the purchaser being then a party to that which made the decree final had a right to appeal from that part of the decree as to which he was a 'party aggrieved.' " We do not see

[1] 52 Am. St. Rep. 167.

that the case would be different where the order confirmed the sale in part and denied confirmation in part; the party interested is quite as much "aggrieved" when the sale is refused confirmation as where it is confirmed—ordinarily he would be more aggrieved. It was the sale, or the act of purchase, by which the purchaser became a party to the action and submitted himself to the jurisdiction of the court as to matters connected with the sale (*Boggs* v. *Fowler*, 16 Cal. 560,[1] cited in the Hammond case), and not the confirmation or refusal to confirm. There was thus conferred "upon the purchaser a definite *status* as a party to the proceedings" (*Hammond* v. *Cailleaud*, 111 Cal. 206[2]); and where confirmation was refused he became a "party aggrieved," and had the right of appeal.

2. The only ground for refusing confirmation of the sale was the alleged inadequacy of the price bid. Appellant contends that this alone is insufficient, and, furthermore, that the evidence does not show any inadequacy warranting such relief.

There is no pretense of unfairness or collusion or fraud in the proceedings. The evidence showed that proper efforts were put forth to find purchasers, that the sale was fairly conducted, and that the highest and best obtainable price was the result of the sale. We attach but little significance to the testimony that it was a bad time to sell, and that there was not much demand for real property then and it was difficult to sell it, owing to the war excitement. These conditions existed when the parties interested asked to have the property sold and agreed to a single referee for that purpose, and, besides, it appears that two of the tracts brought prices which the court thought satisfactory, and confirmed the sales as to them, although the same objection was made to them as to the others. We do not think it can be said as matter of law that only such partition sales may be confirmed as are made when it is a good time to sell, or there is a demand for real property, or there is no war excitement. It should be made affirmatively to appear that these conditions produced a depressing influence on prices such as caused the property to bring much less than its then fair market value and what this amount was.

[1] 76 Am. Dec. 561.            [2] 52 Am. St. Rep. 167.

The mere statement that it was a bad time to sell, or that there was not much demand for real property at the time, is too vague and uncertain and inconsequential to serve as a guide for judicial action.

The question here is twofold: Is there an inadequacy of price shown? and when is inadequacy of price alone sufficient to justify a refusal to confirm the sale in a partition case?

Respondent, in effect, contends that a purchaser under our statute relating to partition is nothing more, and acquires no more rights, than a bidder under the chancery practice in the English courts; that the referee of our statute, like the master in chancery or commissioner of the English courts, is but the agent or hand of the court, and until the court confirms the sale the bidder can have no interest in the property, because the sale is treated as made by the court; that the bidder has only the right to have his bid considered by the court, which would be accepted or refused at the discretion of the court. Under the English chancery practice a mere offer to advance the bid was sufficient to produce an order for resale. "But this rule of the English courts has not been adopted in the states of this Union. With us the sale partakes somewhat of the nature of a sale in chancery under the English practice, and somewhat of that of a sale under execution at law. Until confirmation, the sale is *in fieri*, and subject to the control of the court, but this control is a judicial, not an arbitrary one, and confirmation must follow, unless there exists some reason recognized by law as warranting a refusal to confirm. A bidder at a sale in chancery assumes certain obligations, which he must discharge; he submits himself to the jurisdiction of the court, and becomes a party to the cause in which the sale has been decreed, and he may be compelled to stand by the offer he has made. On the other hand, he acquires certain legal rights, which are to be as much protected and enforced as are other rights of other persons. He is entitled not only to ask but to have confirmation, if there is no reason valid in law for refusal." (*Allen* v. *Martin*, 61 Miss. 78. See, also, *Howell* v. *Mills*, 53 N. Y. 322; *Lefevre* v. *Laraway*, 22 Barb. 167; Freeman on Cotenancy and Partition, sec. 545.) Our code provisions recognize the accepted bid as a sale and the successful bidder as a purchaser. "After completing the sale of the property . . . the referees must report

the same to the court, with a description of the different parcels sold to each purchaser; the name of the purchaser; the price paid or secured; the terms and conditions of the sale," etc., (Code Civ. Proc., sec. 784) ; and section 785 provides that "if the sale be confirmed, an order must be entered," etc. If the purchaser refuses to pay the price bid and take a deed, and a resale is made at a less price, the first purchaser is liable for the difference. (*Hammond* v. *Cailleaud*, 111 Cal. 206;[1] Freeman on Cotenancy and Partition, sec. 547; Rorer on Judicial Sales, sec. 400.) It is true the decree provides that the sale shall be subject to the confirmation of the court, and the sale is not fully completed so as to entitle the purchaser to a deed until confirmation; and section 766 provides that "the court may confirm, change, modify, or set aside the report, and, if necessary, appoint new referees." The court doubtless has the power to confirm or refuse to confirm, but we do not think that this is an arbitrary power; it is neither more nor less than a sound judicial discretion, and, must be exercised with a just regard to the rights of all concerned (*Brock* v. *Rice*, 27 Gratt. 812), "subject to the review of the appellate tribunal, and the propriety of its exercise depends upon the circumstances of each case, and can only be rightfully exercised when it can be done with a due regard to the rights and interests of all concerned—the purchaser as well as others." (*Roundabush* v. *Miller,* 32 Gratt. 454.)

There is not entire agreement by appellate tribunals as to when mere inadequacy of price will justify an order of resale, although the weight of authority seems to hold to the rule that there must be something more than mere inadequacy,— i. e. that the inadequacy must be such as to justify the inference of fraud, or the inadequacy must be so gross as to shock the conscience. Of course, fraud or misconduct in the purchaser or other person connected with the sale, or surprise upon any party in interest created by the conduct of the purchaser or other person directing the sale, and some other causes, will require a resale. In the case before us we do not find it necessary to decide the question. We think the court must look to the value of the property at the time of the sale, and not to the time when the question of confirmation is before the court, unless these periods so nearly coincide as to justify

[1] 52 Am. St. Rep. 167.

the presumption that no change in values has taken place. (*Allen's Estate,* 11 Phila. 48.) In *McRee's Estate,* 6 Phila. 75, the court said: "It would be unjust to give to the heirs an advantage which did not inhere in the estate at the time at which it was struck down to the purchaser. He has his rights, which the court is bound to regard, and if by a rise in the value of the property after these rights have attached he gain an advantage, it is one of which he ought not to be deprived." Here the evidence is, that the value had advanced in the interval, and there is no evidence as to the value at the date of the sale, except that the property brought all that it would then sell for. The testimony of Sontag and Schadde, that it was then worth "more" or "considerably more" than the price bid, shows no substantial difference. A slight difference would satisfy the legal effect of this testimony, and we are clearly of the opinion that an inconsiderable difference would not justify the court in the exercise of the judicial discretion with which it is clothed in ordering a resale. In those cases where inadequacy has been held to be sufficient the difference between the selling price and the actual market value was shown to amount to a considerable sum, and that sum was given, and the court had tangible evidence upon which to base its discretion. No such showing is made in the case before us.

The judgment and order appealed from are reversed, with directions to confirm the sale to appellant.