BARBRE et al. v. HOOD.

(District Court, E. D. Oklahoma. April 23, 1914.)

No. 1545.

INDIANS (§ 15*)—RIGHT TO ALIENATE LANDS—MINOR FREEDMAN ALLOTTEE— "MINOR."

Act May 27, 1908, c. 199, § 1, 35 Stat. 312, except as qualified by other sections of the act, removes all restrictions on alienation by Indian allottees of the Five Tribes who are freedmen or of less than half Indian blood; but section 6 provides that "the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma," and makes other provisions with respect to their guardianship. Section 2 defines the term "minor, as used in this act," to be a female under the age of 18 years or a male under the age of 21 years. *Held*, that the right of a minor freedman allottee to alienate his land is governed by such act and not by the law of Oklahoma, and that, under its provisions, a conveyance by such an allottee before he was 21 years old, and without authority from a probate court, is void.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, vol. 5, pp. 4527, 4528.]

In Equity. Suit by J. A. Barbre and N. M. Coons against L. E. Hood. Decree for defendant.

Tillotson & Elliott, of Nowata, Okl., and James C. Denton, of Muskogee, Okl., for the complainants.

Gilbert M. Gander, of Coffeyville, Kan., for defendant.

CAMPBELL, District Judge. This is an action by the plaintiffs against the defendant to cancel, as a cloud upon plaintiffs' title to the land in controversy, a certain warranty deed or pretended warranty deed executed to the defendant by one Willie Merrell, a duly enrolled freedman citizen of the Cherokee Tribe or Nation of Indians; he being the allottee of the land. As will appear from the agreed statement of facts hereinafter referred to, the only question for determination is the validity of the deed under which the plaintiffs claim title. If that deed shall be held to be valid, then the plaintiffs will prevail. If

---

not, the plaintiffs must fail. With regard to the trial, parties plaintiff and defendant stipulated as follows:

"Stipulation.

"Comes now Tillotson and Elliott, attorneys of record for the plaintiffs herein, and Gilbert M. Gander, attorney of record for the defendant herein, and hereby stipulate and agree as follows:

"1. (a) That this suit is a controversy concerning the legal and equitable ownership of the following described real estate, to wit: West half (W.½) of the southwest quarter (S.W.¼), section thirty-one (31), township twenty-seven (27), range sixteen (16) east, being and lying in the county of Nowata, and state of Oklahoma.

"(b) That the above-described real estate was allotted by the Commission to the Five Civilized Tribes to one Willie Merrell, a duly, regularly, and lawfully enrolled freedman citizen of the Cherokee Nation; that said land was a part of the domain of the Cherokee Nation; and that the west half (W.½) of the southeast quarter (S.E.¼) of the southwest quarter (S.W.¼), section thirty-one (31), township twenty-seven (27), range sixteen (16) east, was selected for and set apart to the said Willie Merrell as his surplus allotment; and that certificates of allotment were issued therefor by the Commission to the Five Civilized Tribes; and that lot four (4) of the northwest quarter (N.W.¼), section six (6), township twenty-six (26), range sixteen (16) east, and the northwest eight (8) acres of lot three (3) of the northwest quarter (N. W.¼) of section 6, township twenty-six (26), range sixteen (16) east, were allotted for and set apart to the said Willie Merrell as the homestead portion of his allotment, and certificates duly issued therefor by said Commission. That thereafter W. C. Rogers, principal chief of the Cherokee Nation, executed a patent, No. 26,538, conveying to and confirming in said Willie Merrell the title to the homestead portion above described, which patent was duly approved by the Secretary of the Interior and filed for record in the office of the Commissioner of the Five Civilized Tribes, on December 8, 1908. And we further stipulate that Exhibit A of the defendant's answer is a true and correct copy of said patent and may be considered by the court as admitted in evidence by both plaintiffs and the defendant.

"2. Also W. C. Rogers, principal chief of the Cherokee Nation, executed a patent to the surplus portion above described, conveying to and confirming in said Willie Merrell the title to the surplus allotment, which said patent was duly approved by the Secretary of Interior and filed for record in the office of the Commissioner to the Five Civilized Tribes, on said 8th day of December, 1908, and that Exhibit B of defendant's answer is a true and correct copy of said patent and may be considered by the court as admitted in evidence by both plaintiffs and defendant.

"3. (a) The parties to this stipulation further agree and stipulate that the title of the plaintiff to said above-described real estate is based upon a certain instrument of writing in the form of a warranty deed, executed to the plaintiff by Willie Merrell, the allottee aforesaid, on the 23d day of April, 1910, and filed for record in the office of the register of deeds in Nowata county, Okl., on June 1, 1910; that the defendant, L. E. Hood, claims title to the same said above-described real estate by reason of an instrument of writing in the form of a warranty deed made, executed, and delivered to said defendant by Willie Merrell, the allottee aforesaid, on the 3d day of September, 1910.

"(b) It is further stipulated that the instrument attached hereto as Exhibit A may be considered by the court as 'the enrollment evidence' (that is, the evidence of enrollment of Willie Merrell), and also that it may be considered in so far as it is legally competent, for the purpose of aiding the court in determining the time when said lands should become alienable by the allottee, Willie Merrell.

"(c) That Exhibit B attached hereto is the census card of Willie Merrell, as shown by the department records, and that it may be considered by the court as admitted in evidence, by both the plaintiffs and defendant, for the

purpose of aiding and assisting the court in determining the time when the lands above described should become and be alienable by the allottee aforesaid.

"(d) It is further agreed and stipulated that the title to the real estate aforesaid is determinable upon one issue and one issue only, and that the court may decide this suit on this one issue, viz., the time when said lands above described became alienable by the allottee, Willie Merrell, both plaintiffs and defendant admitting all the matters above set forth, and that, if the court should find that said lands were alienable by the allottee on the 23d day of April, 1910, the court is then authorized to render judgment in this case quieting the title in and to said lands in the plaintiffs herein, and if the court herein should find that said lands were inalienable on said 23d day of April, 1910, and were alienable on the 3d day of September, 1910, that the court may render judgment in favor of said defendant and against said plaintiffs, quieting the title in said defendant in and to said lands; that the losing parties or their executors, devisees, grantees, or assigns shall make to the successful party or his devisees, trustees, executors, administrators, grantees, or assigns their quitclaim deed therefor; and that the costs shall follow the judgment.

"In witness whereof, the above-named attorneys for plaintiffs and defendant as aforesaid have hereunto set their hands this 30th day of January, 1913."

It appears from the foregoing stipulation that the parties agreed that Exhibits A and B, attached to said stipulation, but not here set forth, constitute the enrollment record of said allottee. From this record it appears that the allottee, Willie Merrell, was 12 years of age on July 1, 1901, and hence reached the age of 21 years on July 1, 1910. Act of Congress May 27, 1908, § 3, 35 Stat. 312. It follows that at the time of the execution of the deed under which plaintiffs claim, to wit, April 23, 1901, he was still under the age of 21 years. It is clear that on September 3, 1910, the date of the deed under which defendant claims, being over the age of 21 years, the allottee could make a valid deed to his land, and that defendant's deed of that date is valid as against the plaintiffs', unless it be held that by their deed of April 23, 1910, from the allottee, the title passed to them. The question presented, therefore, is whether a duly enrolled Cherokee freedman, between 20 and 21 years of age, could make a valid deed conveying title to his allotment or any portion thereof. It is contended by the plaintiffs that the validity of the deed must be tested by the laws of the state of Oklahoma relating to the powers of minors to make contracts affecting real property. As appears from Snyder's Compiled Laws of Oklahoma of 1909, there were in force, at the time of the transactions involved here, statutory provisions prohibiting minors under the age of 18 years from making contracts relating to real property or any interest therein, providing that a minor may make any other contract in the same manner as an adult, subject to his power of disaffirmance, hereinafter referred to, and subject to the provisions of the law on marriage and on master and servant; and it was further provided that a contract made by a minor over the age of 18 (which might include a contract conveying his real property) might be disaffirmed upon his restoring the consideration to the party from whom it was received, or paying its equivalent, with interest, providing that a minor could not disaffirm a contract, otherwise valid, to pay the reasonable value of

things necessary for his support, or that of his family, entered into by him when not under the care of a parent or guardian able to provide for him or them, and providing that a minor could not disaffirm an obligation, otherwise valid, entered into by him under the express authority or direction of a statute. See sections 5035 to 5039, inclusive.

Inasmuch as the allottee, Willie Merrell, while still a minor, was over the age of 18 years when the deed under which plaintiffs claim was executed by him, it follows that, if the foregoing statutes of Oklahoma measure his ability to convey, he had power to make the deed upon which plaintiffs rely, subject to disaffirmance within the time and in the manner provided by the Oklahoma law, and, as there has been no such disaffirmance, the plaintiffs have a valid deed. But the defendant insists that the power of the said allottee to convey the land is not measured by the laws of Oklahoma. He insists that as to this land he is subject to the jurisdiction of the courts of Oklahoma exercising probate jurisdiction, and that the only conveyance he was empowered to make while under the age of 21 years was such as might be made upon order of the proper county court of Oklahoma (exercising probate jurisdiction), pursuant to the state laws establishing the jurisdiction of such courts in relation to minors and their guardianship.

By reference to the act of Congress approved May 27, 1908 (35 Stat. 312), it is seen (section 1) that the restrictions upon the alienation of the land of this allottee were by that act removed, except so far as other sections of the act may be held to modify or qualify the sweeping terms of the first section. Being under the age of 21 years, he was still a minor (section 2), and in his person and property was subject to the jurisdiction of the probate courts of Oklahoma (section 6). By section 6 of said act it is provided:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the state of Oklahoma who shall be citizens of that state or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. All such reports, either to the Secretary of the Interior or to the proper probate court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors. The probate courts may, in their discretion, appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge."

In the case of Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755, the Supreme Court of this state had before it the question of the validity of a deed made by a minor Creek freedman for whom a guardian had been appointed. While a minor and pending such guardianship, she had married, and shortly thereafter, and while still a minor, joined by her husband, executed a deed, purporting to convey her allotment to Winkler. Subsequently her guardian, Jefferson, applied to the proper county court for an order of sale, permitting him to sell his ward's allotment. At the hearing on the petition for the order of sale, Winkler appeared and set up his title, and objected to the court's granting the order to sell the land, but his objections were overruled, and the order was granted. Winkler then filed his petition in the state district court, praying injunction against Jefferson to restrain him from selling the land under the order of the county court. A temporary injunction was granted, and from that order Jefferson, the guardian, appealed to the state Supreme Court. The court quotes the statute of Oklahoma, which provides that:

"All male persons of the age of 21, and all females of the age of 18 years, and all persons who have legally married, of whatever age, * * * may take title to, hold, mortgage, convey, or make any contract relating to real estate or any interest therein."

This statute the court holds specifically confers upon married persons, of whatever age, power to control and dispose by contract of their real estate, or any interest therein, and that such power in a married person is inconsistent with the continuance of the power and authority of a guardian over the ward's real estate. Then the court takes up for consideration the contention of Jefferson, the guardian, that, notwithstanding the state law, its provisions do not apply to his ward, because of certain provisions of the act of Congress of May 27, 1908. After quoting the first section of this act, which in sweeping terms appears to remove restrictions theretofore existing, the court says:

"Rebecca Johnson is an allottee of the first class provided for in said section; and, after the act became effective, the restrictions upon her power to alienate her allotted lands were removed without any limitations or conditions imposed by federal act or treaty, and she held the same as other minor citizens of the United States and of this state hold their property, unless limitations were imposed thereon by subsequent sections of the act."

The court then quotes section 2 and a portion of section 6 of the act of May 27, 1908. Then, after stating the contention of the plaintiff in error to be that sections 2 and 6 constitute in effect a proviso of that part of section 1 of the act removing restrictions from minor allottees and of allottees of less than half Indian blood, and making the removal of such restrictions conditioned upon an order of some probate court of the state, for the sale of such restricted property until the minor, if a female, reaches the age of 18, and, if a male, reaches the age of 21, the court proceeds:

"It is contended by defendant in error, on the other hand, that the provisions of these two sections have no relation to, and do not affect, section 1. With this contention we cannot agree. Throughout the act of Congress, commonly known as the 'Enabling Act,' under which the Indian Territory and

the territory of Oklahoma were admitted into the Union as one state, the Indians of the Five Civilized Tribes of the Indian Territory were treated as citizens of the proposed state, and are so treated by the provisions of the Constitution; but said enabling act contains a proviso which requires 'that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territory (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed.' Act June 16, 1906, c. 3335, 34 Stat. 267. By one of the provisions of the enabling act, the people of the state, acting through their representatives and delegates to the constitutional convention, were required to, and did, by an ordinance irrevocable, accept the terms and conditions of said act. It is unnecessary to comment upon the extent or limitation of the authority over the lands and property of such Indians that is by said provision of the enabling act reserved to the United States government, for, whatever be the extent of that authority or its limitations, we think it cannot be questioned that said authority reserved is sufficient to retain in the government of the United States jurisdiction over the restricted lands of said Indians to determine and provide how and in what manner such restrictions shall be removed, and that, until such restrictions are removed, the lands of said Indian minor allottees are not within the jurisdiction of the probate courts of the state with power in said courts to order the sale thereof for any purpose. Since the power to remove such restrictions is wholly within Congress, it may say upon what terms and conditions they will be removed, and under the supervision of what court or officer the sale of same shall be made.

"Section 2 defines a minor to be a female under the age of 18 years or a male under the age of 21 years. It is true that this definition occurs in a proviso of said section 2, and we do not forget that one of the general rules of statutory construction applicable to provisos is that a proviso is intended to restrict or qualify some preceding matter and does not apply to matter which follows, and that it should be construed with reference to the immediately preceding part or clause of the section to which it is attached; but this rule is not without its exceptions, and, where it is plainly intended that such proviso shall limit, qualify, or define other sections or provisions of the act than that of which it forms a part, the court should give it such meaning. 2 Lewis' Sutherland, Statutory Construction. If the proviso defining the term 'minor' or 'minors' had read, 'And provided further that the jurisdiction of the probate courts of the state of Oklahoma over lands of said minors and incompetents, shall be subject to the foregoing provisions and the terms minor or minors shall include males under the age of twenty-one years and all females under the age of eighteen years,' we think the foregoing general rule of construction applicable to provisos would apply, and said proviso would have application only to the provisions of section 2, but there is inserted in said proviso and immediately after the words 'minor' and 'minors' the phrase 'as used in this act,' manifesting thereby, we think, an intent to define said terms as used in the various provisions of the act. It will be noted that by section 2 the United States government consents to and confers upon the probate courts of the state jurisdiction over the restricted lands of certain minor allottees for the purpose of leasing same for a period not to exceed five years. In order that no doubt might arise as to who was intended to be included in the term 'minors,' and that there should be no conflict between the courts of the state and the federal government in the exercise, respectively, of their jurisdiction over said minors, Congress deemed it necessary to define the term. There occurs in section 6 another proviso which reads: 'And provided that no restricted lands of living minors shall be sold or incumbered, except by lease authorized by law, by order of the court or otherwise.' Here, again, a limitation is placed upon the power of the state courts over the restricted lands of minors, and it will not be presumed that Congress intended to define the term 'minors,' as used in sec-

tion 2, in order that no confusion might arise, and leave the same undefined, as used in the foregoing proviso in section 6, when the definition made in section 2 is in language making it applicable wherever the term occurs in the act. As before stated, the language of section 1, removing the restrictions upon lands of Indian allottees of less than half Indian blood, if read and construed alone, independent of the other provisions of the act, constitutes an unconditional removal of said restrictions, and renders said allotted lands subject to the control of said allottees under the law of the state, just as other citizens of the state own and control their property. That said section is not to be construed and enforced independent of other sections of the act is clearly manifest by reading sections 3, 4, and 5. Section 3 prescribes how quantum of Indian blood and the age of such allottees shall be determined, and section 4 provides that said lands shall not be subject or held liable to any form of personal claim or demand against the allottees arising or existing prior to the removal of said restrictions other than con_racts theretofore expressly permitted by law, and section 5 makes void any attempted alienation or incumbrance by deed, mortgage, contract of sale, or power of attorney made before or after the approval of the act affecting the title of lands prior to the removal of restrictions therefrom. Immediately following the foregoing sections, all of which have bearing upon the lands dealt with in section 1 of the act, occurs the provision of section 6 which provides that the property of minor allottees of the Five Civilized Tribes shall be subject to the jurisdiction of probate courts of the state, except as otherwise specifically provided by law. Just as the removal of restrictions effected by section 1 upon the lands of both adult and minor allottees of certain classes are limited by the provisions of sections 4 and 5, which render said lands not liable to certain claims or demands against said allottees or subject to certain contracts, deeds, or incumbrances that may have been executed by them, so the removal of restrictions upon the lands of minors is limited by the requirement of section 6 that said property of minor allottees shall be subject to the jurisdiction of the probate courts of the state, and the term 'minor allottees,' as defined by section 2, means males under the age of 21 and females under the age of 18 years. In other words, construing all of the foregoing provisions of said act together, we think it was the legislative intent to provide that the allotted lands of freedmen and mixed blood Indians having less than half Indian blood, under the age of 18, if a female, and under the age of 21, if a male, may be sold under the supervision and jurisdiction of the probate courts of the state, and not otherwise.

"It therefore follows that since Rebecca Johnson was not 18 years of age at the time she conveyed the land in controversy to defendant in error, and the sale to him was not made under the supervision and order of any probate court of the state, he acquired no title thereby, and has not sufficient interest in the lands in controversy to entitle him to maintain this action."

I have quoted thus at length from the foregoing opinion because it is such a clear and complete analysis of the provisions of the act of Congress bearing upon the question involved in this case. In the recent case of Tirey et al. v. Darneal, 37 Okl. 606, 133 Pac. 614, Judge Robertson, of the State Supreme Court Commission, speaking for the Commission, in a case involving the question of the validity of a deed of a married Choctaw Indian under 21 years of age, whose right to sell the land involved was only questioned because of his minority, said:

"The deed was void; of that there can be no doubt. Section 6 of the act of Congress approved May 27, 1908 (35 Stat. at L. 313, c. 199), which deals with the subject of the removal of restrictions from lands of allottees of the Five Civilized Tribes, provides that the persons and property of minor allottees of said Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the control and jurisdiction of the probate courts of the state of Oklahoma. This provision of that act is in the nature

of a restriction, by Congress, on the alienation of land belonging to minor allottees, and can be removed only by a regular proceeding, provided by statute, through the instrumentality of the county court. It has long been the policy of Congress, upheld universally by the courts, that the alienation of restricted Indian allotments was not only prohibited, but all such attempted conveyances were absolutely void. As was said above, this conveyance by Darneal to Tirey, by reason of the provision of the act of Congress, supra, was not voidable but absolutely void."

The case of Truskett v. Closser, 198 Fed. 835, 117 C. C. A. 477, decided by the Circuit Court of Appeals for this circuit, involved the right of Robert F. Goodman, a Cherokee of one-eighth Indian blood, between 20 and 21 years of age, to lease his allotment. In that case it was contended that Goodman had acquired such right by virtue of a decree of the state district court removing his disabilities of minority pursuant to a state statute. After quoting section 1 of the act of Congress of May 27, 1908, the court said:

"Goodman came within the class first named in this section, having less than one-half Indian blood, and it is claimed that his allotment was freed from all restrictions. If that section stood alone, this contention might be sustained, but it must be construed with other sections contained in the same act. * * *

"When Congress included minors in section 1, it had the right, in other sections of the law, to declare who should be considered minors for the purposes of that section. This it did in the latter part of section 2, above quoted. It is said that the declaration there made, being in a proviso, is limited to the section in which it is found. Congress expressly declared that such was not its intention, for, instead of saying 'the term "minor" or "minors," as used in this section,' it said 'the term "minor" or "minors," as used in this act.' The same definition of the word 'minor' is found in section 4 of the act of July 1, 1902 (32 Stat. 716 [c. 1375]).

"The exclusive right to determine when Goodman became of age was in Congress, so far as his allotment was concerned. It declared that he should not become of age until he was 21. A law of Oklahoma, which declared that he should become of age at 20, would be in conflict with the act of Congress, and would be void. So any act of the state which authorized any of its courts to determine that Goodman became of age when he was 20, or that at such age he had the rights of an adult, would be in contravention of the same law, and would also be void. The decree of the district court of Washington county, emancipating Goodman, was based upon the provisions of sections 73, 74, and 75 of Wilson's Revised Statutes of 1903, which were adopted as the law of the state of Oklahoma. These statutes could confer no jurisdiction upon that court to remove the disabilities of infancy under which Goodman labored at the time the decree was made, so far as his allotment was concerned. That decree was therefore void, and being void, and Goodman being a minor when the lease was made to Overfield, the latter acquired nothing thereby. The construction of this act came before the Supreme Court of Oklahoma in the case of Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755. In that case an Indian girl married when she was under 18, and while under that age conveyed her allotment. It was held that, under the general law of Oklahoma, the marriage emancipated her, but that this general law could not have effect in her case, in view of the provisions of the said act of May 27, 1908, and that her conveyance was void.

"Section 6 of the act, so far as here important, is as follows: 'Sec. 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma.'

"The appellants claim that the phrase 'except as otherwise specifically provided by law' refers to and includes the laws of Oklahoma. It is apparent, however, that the law therein mentioned must be federal law, and not state

law. It cannot for a moment be supposed that Congress would take the trouble to place, under the jurisdiction of a particular court, the affairs of Indian minors, and in the same section provide that the state might by its action entirely nullify that provision."

By section 6 of the act of Congress, the property of minor allottees of the Five Civilized Tribes is made subject to the jurisdiction of the probate courts, "except as otherwise specifically provided by law." This exception, however, as we have seen in Truskett v. Closser, supra, has relation to federal, and not to state, law. Then, immediately after providing that the property of these minor allottees shall be subject to the jurisdiction of the probate courts, Congress in the same section further provides for the appointment by the Secretary of the Interior of local representatives, whose duty it shall be to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and to report to the probate court any derelictions of duty on the part of such guardians or curators which they may discover, and to even go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of such minor allottees, and to make full report of such matters to the Secretary of the Interior, which reports, either to the Secretary or to the court, were to become public records subject to the inspection and examination of the public; the necessary court fees to be allowed against the estates of such minors. It was further provided that the probate courts might, in their discretion, appoint such representatives as guardians or curators for such minors without fee or charge. Here was provided by Congress a plan by which all minor allottees, as to their allotted lands, were to be under the supervision and control of the probate courts of Oklahoma, and, in order to further protect their interests and assist the several probate courts in promoting their welfare, Congress provided these special representatives of the Secretary of the Interior, whose duty it was to see that the guardians and curators of these minors dealt fairly with their wards, and to report to the proper court any failures so to do. The state Supreme Court has held, in Jefferson v. Winkler, supra, that the state law, relieving married minors of the disability of minority, does not apply to these minor allottees. The Circuit Court of Appeals for this circuit, in Truskett v. Closser, supra, has held that the state law providing for the removal of disabilities of minority by the state district court does not apply to these minor allottees. For like reasons, I conclude, in view of the provisions of section 6 of the act of Congress of May 27, 1908, that the state law, permitting minors of a certain age to make contracts affecting their real estate, does not apply to minor allottees of the Five Civilized Tribes. I agree with Judge Hayes in Jefferson v. Winkler, supra, that, construing all the provisions of said act of Congress together, it was the legislative intent to provide that the allotted lands of minor freedmen and mixed blood Indians, from which restrictions were in terms removed by the provisions of section 1 of the act, might be sold under the supervision and jurisdiction of the probate courts of the state, and not otherwise, and that the deed relied upon by the plaintiffs in this case is therefore void.

Decree may accordingly enter for the defendant.