## BELL v. FITZPATRICK.

No. 4776.    Opinion Filed February 29, 1916.

Rehearing Denied May 9, 1916.

(157 Pac. 334.)

1. **INDIANS—Lands—Conveyances—Jurisdiction of State Court.** A decree of a district court of this state purporting to confer upon an Indian minor allottee of tribal lands majority rights, including authority to execute a conveyance of her allotment, is ineffectual and void, in so far as it undertakes to authorize a conveyance of said lands in violation of the congressional restrictions thereon.

2. **SAME—Cancellation.** In an action to set aside a void conveyance of the lands of an Indian minor allottee, it is not necessary for plaintiff to plead a formal tender and offer to return the consideration received therefor as a condition precedent to maintaining such action.

3. **SAME.** The fact that a minor Indian allottee in her own name brought suit to set aside a void conveyance of her allotted lands, executed after May 27, 1908, and thereafter permitted said suit to be dismissed with prejudice, cannot operate as a bar to a subsequent suit by her upon attaining her majority to cancel said deed and have same removed as a cloud upon her title.

4. **INDIANS—Lands—Action by Guardian—Effect.** Neither can the guardian of said minor, by commencing an action and thereafter entering into a compromise and settlement of such litigation, by which same was dismissed, divest the title of said minor to said lands, nor confer any rights upon the grantee in such void conveyance, nor give any validity thereto, nor create an estoppel against said allottee thereafter asserting the invalidity of such void conveyance.

5.    **LIMITATION OF ACTIONS—Computation of Period—Accrual of Cause of Action—Infants.** The statute of limitations does not begin to run against an action to set aside a void conveyance of an Indian minor allottee of his or her allotted lands, executed after the passage and approval of Act Cong. May 27, 1908, c. 199, 35 Stat. 312, until such minor has attained his or her majority, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes.

(Syllabus by the Court.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by Lillie E. Fitzpatrick against John A. Bell. Judgment for plaintiff, and defendant brings error. Affirmed.

*Veasey, O'Meara & Owen,* for plaintiff in error.

*C. W. Kinnan* and *J. P. Rositer,* for defendant in error.

HARDY, J.   Defendant in error, as plaintiff in the court below, brought this action in the district court of Nowata county to cancel a certain deed, executed by her to defendant, conveying her allotted lands, and to have declared null and void a decree of the district court of Nowata county, conferring rights of majority upon her, and to have canceled and set aside certain stipulations and orders of dismissal entered thereon in two certain suits theretofore brought by her in her own name and in her behalf by a guardian.   Plaintiff is a Cherokee Indian of less than half blood.

Defendant answered, alleging that the rights of majority had been conferred upon plaintiff, and thereafter she executed the deed in question, and that after the execution of said deed plaintiff commenced an action for the cancellation thereof, which said action was dismissed with

prejudice, and, further, that said plaintiff, by her guardian, Chas. E. Tanner, commenced an action to enjoin defendant and those under him from removing any oil from the premises and for other relief; that said guardian entered into an agreement with defendant that no further claim would be set up to said land, nor cloud placed upon defendant's title, and that said action would be dismissed with prejudice, which was thereafter done; and that by reason of said alleged judgments of dismissal defendant's title to the premises was adjudicated, settled, and determined. And defendant further pleads the statute of limitations as a bar to plaintiff's right of recovery. The answer admits that the testimony taken before the Commission to the Five Civilized Tribes shows that plaintiff was seven years old on October 9, 1899, and that her age is shown by the rolls to be nine years in September, 1902.

Plaintiff filed demurrers to the separate defenses set up in the answer, which were sustained, except as to the eighth paragraph thereof, and defendant, electing to stand upon his answer, brings the case here, and plaintiff brings cross-appeal.

The decree of the district court of Nowata county, rendered on the 18th day of November, 1908, purporting to confer the rights of majority upon plaintiff, did not authorize her to convey her allotment by the deed of that date. By section 1 of the act of Congress of May 27, 1908, restrictions upon the lands of minors of less than half Indian blood were removed. By section 2 of said act it was further provided:

"That the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males

under the age of 21 years and all females under the age of 18 years."

And section 6, in part, reads as follows:

"That the persons and property of all minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma."

In the case of *Jefferson v. Winkler*, 26 Okla. 653, 110 Pac. 755, construing the foregoing provisions of the act in question, the court held that a minor, within the meaning of said sections, includes males under the age of 21 years and females under the age of 18 years, and concluded that the marriage of such a minor does not confer upon him or her the authority to sell his or her allotted lands, independent of the jurisdiction and supervision of the probate courts of the state. The doctrine announced in that case has been consistently followed and applied since the opinion therein. *Kirkpatrick v. Burgess*, 29 Okla. 121, 116 Pac. 764; *Tirey v. Darneal*, 37 Okla. 606, 133 Pac. 614; *Cochran v. Teehee*, 40 Okla. 388, 138 Pac. 563; *Collins Inv. Co. v. Beard*, 46 Okla. 310, 148 Pac. 846.

In *Tirey v. Darneal*, 37 Okla. 606, 133 Pac. 614, it was said that section 6 of the act of Congress of May 27, 1908, providing that persons and property of minor allottees of the Five Civilized Tribes should, except as otherwise specifically provided by law, be subject to the control and jurisdiction of the probate courts of the state, was in the nature of a restriction on the alienation of said lands by Congress, and could only be removed by a regular proceeding as provided by statute, through the instrumentality of the county court.

In *Truskett v. Closser*, 198 Fed. 835, 117 C. C. A. 477, the Circuit Court of Appeals for the Eighth Circuit held

that under the act of May 27, 1908, *supra,* a district court of the state could not confer majority rights on an Indian allottee under the age of 21 years, so as to qualify him to lease or otherwise convey his allotment. On appeal to the Supreme Court of the United States the Circuit Court of Appeals was affirmed, in *Truskett v. Closser,* 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549. See, also, *Barbre v. Hood* (D. C.) 214 Fed. 473; *Collins Inv. Co. v. Board, supra.*

It appears to be settled conclusively by the foregoing decisions that the decree of the district court of Nowata county conferring rights of majority upon plaintiff was not effectual to remove the restrictions upon the alienation of her lands, and, that title thereto could be divested only by a proceeding in accordance with the statute in the county court having jurisdiction thereof, and that the deed executed by her was absolutely void and conveyed no right or interest in the lands of said minor.

Nor was it necessary for plaintiff to plead a formal tender of the consideration received by her as a condition precedent to her right to maintain this action. In *Stevens v. Elliott,* 30 Okla. 41, 118 Pac. 407, the court said:

"In a suit in equity by a minor Creek freedman to cancel and annul a deed executed by her during her minority, it is unnecessary to formally allege and offer to do equity by returning the consideration received by her during minority."

In the second paragraph of the syllabus in *Tirey v. Darneal, supra,* the court said:

"Where such a void deed is executed, the grantor is not required to refund the consideration therefor before asking relief in equity."

Other opinions announcing the same rule are as follows: *Blakemore v. Johnson,* 24 Okla. 555, 103 Pac. 554; *Stevens v. Elliott,* 30 Okla. 41, 118 Pac. 407; *Gill et al. v. Haggerty,* 32 Okla. 407, 122 Pac. 641; *Alfrey v. Colbert,* 168 Fed. 231, 93 C. C. A. 517; *Collins Inv. Co. v. Beard,* *supra.*

In *Heckman v. United States,* 224 U. S. 413, 32 Sup. Ct. 424, 36 L. Ed. 820, the Supreme Court of the United States says:

"It is said that the allottees have received the consideration, and should be made parties in order that equitable restitution may be enforced. Where, however, a conveyance has been made in violation of the restrictions, it is plain that the return of the consideration can not be regarded as an essential prerequisite to a decree of cancellation. Otherwise, if the Indian grantor had squandered the money, he would lose the land which Congress intended he should hold, and the very incompetence and thriftlessness which were the occasion of the measures for his protection would render them of no avail. The effectiveness of the acts of Congress is not thus to be destroyed. The restrictions were set forth in public laws, and were matters of general knowledge. Those who deal with the Indians contrary to these provisions are not entitled to insist that they should keep the land if the purchase price is not repaid, and thus frustrate the policy of the statute. *United States v. Trinidad Coal & Coke Co.,* 137 U. S. 160 [11 Sup. Ct. 57, 35 L. Ed. 640]."

Counsel correctly state the rule that:

"Where the court has jurisdiction of the parties and the subject-matter in a particular case, its judgment therein, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment by the parties or their privies in a collateral action or proceeding."

This presupposes jurisdiction of the parties and of the subject-matter and the judicial power to render the particular judgment. For the alleged orders or judgments of dismissal to have the effect contended it must appear that the court had jurisdiction of the parties and of the subject-matter of the litigation therein involved, and the judicial power to adjudicate the particular question.

It appears from the pleadings in each of these cases wherein orders of dismissal were entered, which are now urged in bar of this action, as shown by the record herein, that plaintiff at the time of executing the conveyance to her lands and at the time said actions were instituted, and on the date of said purported judgments of dismissal, was a minor, and that her lands had not been sold by virtue of an order of the probate court of the county having jurisdiction thereof, in a proper proceeding. The effect which counsel seek to give the purported orders of dismissal is to divest the plaintiff of title in and to the lands in question and reinvest same in defendant. While they say that it amounts to a judgment quieting title, this is another way of saying that the void deed is given validity and effectiveness in this indirect way when such deed is an absolute nullity. Defendant had no title which could be quieted, and the district court had no jurisdiction to effect a transfer of the plaintiff's title to her restricted lands to defendant in such manner. Neither can defendant by any device or scheme acquire that title in violation of the public policy of the United States, as expressed in the various acts of Congress affecting matters of this character.

By section 2 of the act of Congress of May 27, 1908, the probate courts of this state are given jurisdiction over the lands of minors and incompetents, subject to the pro-

visions of that act, and all males under the age of 21 years and all females under the age of 18 years are declared to be minors; and section 6 of said act, as already quoted, reads in part as follows:

"Sec. 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma."

This phrase, "except as otherwise specifically provided by law," means federal, and not state, law. *Truskett v. Closser, supra; Barbre v. Hood, supra; Walker et al. v. Brown*, 43 Okla. 144, 141 Pac. 681; *In re Allen's Will*, 44 Okla. 392, 144 Pac. 1055.

Here is a specific grant of jurisdiction by Congress to the county courts of the state over the lands of Indian minors and incompetents, and under this grant of jurisdiction the county courts of the state, in accordance with the statutes regulating such matters, may authorize a sale of such lands of minors and incompetents as are embraced within the terms of said act, and no other court of this state has jurisdiction to entertain such proceeding, or to authorize a sale thereof, or to give validity to any conveyance made in contravention of the terms of the act, and no state law conferring jurisdiction upon any other court in any class of proceedings can be held to extend in its operation to matters of this kind, so as to exercise in effect that jurisdiction which is expressly conferred upon the county court. In discussing the provisions of this act, this court, in *Jefferson v. Winkler*, 26 Okla. 653, 110 Pac. 755, said:

"By one of the provisions of the Enabling Act the people of the state, acting through their representatives and delegates to the constitutional convention, were required to, and did, by an ordinance irrevocable, accept the

terms and conditions of said act. It is unnecessary to comment upon the extent or limitations of the authority over the lands and property of such Indians that is by said provision of the Enabling Act reserved to the United States government; for, whatever be the extent of that authority or its limitations, we think it cannot be questioned that said authority reserved is sufficient to retain in the government of the United States jurisdiction over the restricted lands of said Indians to determine and provide how and in what manner such restrictions shall be removed, and that until such restrictions are removed, the lands of said minor allottees are not within the jurisdiction of the probate courts of the state, with power in said courts to order the sale thereof for any purpose. Since the power to remove such restrictions is held within Congress, it may say upon what terms and conditions they will be removed, and under the supervision of what court or officer the sale of same shall be made."

And Congress having said in the act under consideration that said lands may be sold through the probate court, it naturally follows that the power of the probate court in matters of the kind thus delegated is exclusive, and that a sale may not be made in any other court or in any other manner. The court further said, in the course of the opinion:

"In other words, construing all of the foregoing provisions of said act together, we think it was the legislative intent to provide that the allotted lands of freedmen and mixed-blood Indians, having less than half Indian blood, under the age of 18 if a female and under the age of 21 if a male, may be sold under the supervision and jurisdiction of the probate courts of the state, and not otherwise."

In *Collins Investment Co. v. Beard, supra,* the court had under consideration certain sections of the state statutes under which a decree of the state court was entered conferring upon the minor full power to make contracts

concerning his allotment. In reference to the contention that such decree operated to remove restrictions upon alienation and to give validity to a conveyance executed thereafter; the court said:

"The statutes above referred to need no analysis, or even a construction, here, for the reason that when the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation, is involved, we must look to the acts of Congress, and to those acts and laws alone. In other words, if a state law, by its language or from its proper construction or its operation, would permit the alienation of a restricted Indian's allotment and render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state laws fail; and this because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state, and this reservation of jurisdiction was assented to in the Constitution which the people adopted. To give the desired construction to either of the statutes under consideration would be, in effect, to accomplish the removal of the federal restrictions on the sale of allotted lands by means of said legislation. Once conceding this principle, it is easily seen that the federal control would be interfered with, and might be ultimately suspended. No such construction is possible."

Here is an express declaration by this court that no state statute may be permitted through its operation to give validity to a void conveyance of restricted lands, and this expression we deem squarely in point in the present controversy. If the contention of defendant be correct, it would be an easy matter to procure a conveyance from a minor to his allotted lands, which is conceded to be void, and by causing suit to be brought by said minor, or by

some person in his behalf, and then entering into an agreement to dismiss said suit for a nominal consideration—as in the present instance, for the sum of $1—secure a dismissal of said suit, and thereby obtain title to said restricted lands. This cannot be done. A case very much in point is the case of *Goodrum v. Buffalo,* 162 Fed. 817, 89 C. C. A. 525. In that case an action of ejectment was instituted by the defendant in error, through his guardian, for the recovery of certain lands in the Quapaw reservation in the Indian Territory. The case was submitted to the court under a provision in the Arkansas statute authorizing parties to a civil action to agree upon a case containing the facts and submit it to the court having jurisdiction. The judgment rendered by the court was held to be invalid, when interposed to defeat plaintiff's action, among other reasons, because as to the power of alienation of said lands the allottee, within the period of limitation, was not a person *sui juris,* capable of assenting to such submission. In the opinion the court said:

"The effect of the act of Congress, under which the patent was granted, was to deny to the Indian the exercise of any consent whereby the restriction upon the power of alienation could be removed. If the Indian could create no estoppel against himself or herself by deed of conveyance, how could he or she create an estoppel, by consenting to a judgment as the basis of an estoppel, effectual to alienate the land in direct contravention of the act of Congress? The allottees of these lands, during the probationary period of 25 years, were under as much disability to alienate them by contract or deed, or voluntary submission to a court, as if they had been under the disability of coverture or minority. * * * The disability of these Indians is imposed by statute. It must therefore logically and necessarily follow that the record and judgment of a court, disclosing on their face that the disqualified Indian

was entering into an agreement for submission of the question of his right to dispose of these lands, was in no wise different from such a proceeding participated in by a minor infant. It is a wholesome rule of law that a party may not accomplish by indirection that which he could not do directly. That which Goodrum undertook to do by stipulation with this Indian could not become the subject of a controversy to be submitted to the jurisdiction of the United States court, so as to build a foundation to support the plea of *res adjudicata*."

And so, in the present case, when it was disclosed by the pleadings in the litigation, and also by the enrollment records of the Commissioner to the Five Civilized Tribes, that plaintiff was at all those times a minor, and that her lands had not been sold in the county court in the manner required by law, the question of her age and the alienability of her lands, or the validity of the conveyance executed by her in violation of law, were not questions which could be submitted to that court for determination, but such questions were conclusively foreclosed by the legislation of Congress in reference thereto. Plaintiff, not being capable in law of executing a conveyance of her allotted lands, was equally incapable of entering into an agreement whereby the validity of such conveyance should be submitted to that court for determination; and the court being without jurisdiction to give validity to such void conveyance by a decree in such litigation, a mere order of dismissal, entered therein, could not have that effect. Neither could plaintiff's guardian enter into any such agreement, nor could he confer any such jurisdiction upon the court.

In *Bowling v. United States*, 191 Fed. 19, 111 C. C. A. 561, the Circuit Court of Appeals for the Eighth Circuit had under consideration the effect of a judgment ren-

dered under the following circumstances: One William Wea was a member of a Confederated Wea, Peoria, Kaskaskia, and Piankeshaw Tribes of Indians. Patent had issued in the lifetime of the said Wea, conveying to him certain lands and imposing a restraint upon the alienation thereof for a period of 25 years from the date of the patent. After his death his heirs entered into a contract to sell the land, and in a suit in the United States Court for the Northern District of the Indian Territory judgment was entered sustaining its validity. The property was thereupon conveyed by the heirs, and passed by various mesne conveyances to the plaintiffs in error in that case. In sustaining the right of the United States to maintain the suit, the Circuit Court of Appeals held that such right to maintain a suit in equity to set aside conveyances of lands by Indian allottees in violation of the statutory restriction on alienation was not barred by a decree entered against such allottees in a suit for specific performance of their contract to convey, to which the United States was not a party, and approved the holding in *Goodrum v. Buffalo, supra.* Upon appeal to the Supreme Court of the United States the decision of the Circuit Court of Appeals was affirmed (233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080), and in the course of its opinion the Supreme Court said:

"And it is no longer open to question that the United States has capacity to sue for the purpose of setting aside conveyances of lands allotted to Indians under its care where restrictions upon alienation thereof have been transgressed. Since the decision below the precise question has been determined by this court in *Heckman v. United States,* 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820, and it was there held that the authority to enforce restrictions of this character is the necessary complement

of the power to impose them. It necessarily follows that, as a transfer of the allotted lands contrary to the inhibition of Congress would be a violation of the governmental rights of the United States, arising from its obligations to a dependent people, no stipulations, contracts, or judgments rendered in suits to which the government is a stranger can affect its interest. The authority of the United States to enforce the restraint lawfully created cannot be impaired by any action without its consent. *Heckman v. United States, supra.* If, therefore, the conveyance by the allottee's heirs, in the present case, would otherwise have been subject to cancellation, it was not saved by reason of the judgment entered in another suit against the purchaser."

The Circuit Court of Appeals for the Eighth Circuit, in *Barbre et al. v. Hood,* 228 Fed. 658, in discussing the provisions of the act of May 27, 1908, determined in accordance with previous holdings that a conveyance of the lands of a Cherokee minor, in violation of the terms of said act, was void, and said:

"The continued interest of the government in the welfare of the Indians is further evidenced by the provision in section 4 of the act of May 27, 1908, that 'allotted lands shall not be subjected or held liable to any form of personal claim or demand against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law.' Section 6 definitely commits the persons and property of the minors to the jurisdiction of the state probate courts. The jurisdiction so intrusted was exclusive of that of other tribunals, as, for example, of the local district courts, to confer rights of majority upon minors, and was to be exercised in the customary way, through guardians or curators. Were it otherwise, the careful provision of the section for protective oversight by the Secretary of the Interior and his representatives could easily be made of no avail. The deed of the allottee, ex-

ecuted when he was a minor, and not by guardian acting under the authority of the court having jurisdiction, is void. To sustain the validity of such conveyances, by estoppel, or to hold them effective until compliance with conditions not prescribed by Congress, would impair and in some cases wholly defeat the policy of the government with respect to the Indians."

See same case in District Court, 214 Fed. 473.

The question in *Homer v. McCurtain,* 40 Okla. 406, 138 Pac. 807, was whether a judgment of the county court determining that the will of a full-blood Indian who disinherited her spouse was executed in accordance with the requirements of the act of Congress of April 26, 1906 (34 Stat. 137, c. 1876), was valid, and it was held that such question was within the jurisdiction of the county court, and a judgment admitting such will to probate, unless appealed from, was final and not subject to collateral attack.

In *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49, and in *Freeman v. First National Bank,* 44 Okla. 146, 143 Pac. 1165, the conveyances involved were executed before the passage and approval of the act of May 27, 1908, which made the enrollment records of the Commissioner to the Five Civilized Tribes conclusive evidence of the age of the allottees in reference to all questions under that act, and the age of the grantor in these cases was an issue that might lawfully be inquired into and determined by the court, and therefore was a question of fact upon the determination of which depended the validity of the deeds in question.

In so far as the cases of *Markham v. Dugger,* 34 Okla. 492, 126 Pac. 190, and *Wiley v. Edmondson,* 43

Okla. 1, 133 Pac. 38, are in conflict with the views herein expressed, they are hereby overruled.

The conclusion to be deduced from the foregoing authorities is inevitable that defendant acquired no title by the conveyance in question, and that the purported dismissals gave no validity thereto, and are ineffectual to operate as an estoppel against plaintiff's right of recovery herein.

The decree conferring rights of majority upon plaintiff being void, in so far as it undertook to confer upon her the right to alienate her allotted lands, or to change her status in reference thereto, the statute of limitations did not commence to run against her right of action to have said deed canceled and removed as a cloud upon her title until she in fact became of age, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes, which was on the 21st day of June, 1911, and this action being commenced on the 20th day of June, 1912, was within either or all of the statutes relied upon as a bar hereto, and therefore this action is not barred. It follows, therefore, that the order sustaining the demurrer to all that part of defendant's answer, except paragraph 8 thereof, should be and the same is hereby affirmed.

The sole question presented by the cross-petition in error is the order of the court overruling the demurrer to the eighth paragraph of the defendant's answer. In support of this assignment it is urged that when defendant took the deed of date November 18, 1908, he abandoned the lease theretofore executed to Furlough, and did not pay any royalty, or recognize plaintiff as his landlord, or do any act which could be construed as a recogni-

tion of the oil and gas lease after the date of said deed. The answer contains a general denial of all of the plaintiff's allegations not specifically admitted, and plaintiff's demurrer admits the truth of the allegations in the answer. Whether the lease was abandoned is a question of fact, which must be determined from the evidence. The allegations of the petition being denied, and the allegations of the answer admitted, for the purpose of determining this question, we must assume that said lease did not expire until the 21st day of June, 1911, and did not in any event terminate until the 21st day of June, 1910.

There was no error in overruling the demurrer to the eighth paragraph of the answer.

All the Justices concur.