## TUCKER v. LEONARD et al.

No. 19370. Opinion Filed April 29, 1930.

Rehearing Denied Sept. 9, 1930.

Neff & Neff, Kittie C. Sturdevant, and Bleakmore & Barry, for plaintiff in error.

Thrift & Davenport and Everest, Dudley & Brewer, for defendants in error Charles B. Shaffer and Bernard B. Jones.

ANDREWS, J. The plaintiff in error was plaintiff in the trial court, and will be so referred to here. The defendants in error were defendants in the trial court. Where necessary they will be referred to by their individual names, and otherwise they will be referred to as defendants.

Fred Tucker is a duly enrolled Creek freedman, and as such had allotted to him a tract of land described as the southeast quarter of the southwest quarter, section 3, township 17 north, range 7 east, and the east half of the northwest quarter and the northeast quarter of the southwest quarter, section 18, township 17 north, range 8 east, all in Creek county, Okla. He was born on February 13, 1903. His mother is Ella Tucker, and his father, Sammy Tucker, is dead. He has a brother, George Tucker, who is the plaintiff in error in cause No. 19432 in this court, 144 Okla. 258, 291 Pac. 135, in which the issues are substantially the same as here. The causes were tried together and the same judgment was rendered in each case. They were appealed separately, but were briefed together in this court.

The father of the plaintiff was appointed guardian of the estates of the plaintiff and his brother, George Tucker, and, with the approval of the county court, made an oil and gas mining lease to the Prairie Oil & Gas Company. The validity of that lease is not questioned.

Sammy Tucker, the father of plaintiff, died intestate on June 17, 1911, and on July 31, 1911, C. K. Leslie was duly appointed guardian of said estates and qualified as such. Twelve days thereafter C. K. Leslie, as guardian of the estates of the two minors, filed in the county court of Wagoner county two petitions for the sale of the allotments of the minors.

The petitions were contested by the mother and, after the hearing thereon, the county court, on September 11, 1911, found that it was not necessary to sell the land of either of the minors and that it was not to the best interest of either of them that the same be sold, and denied the petition. On October 3, 1911, Ella Tucker executed a petition to the county court of Wagoner county in which she waived time and notice of hearing of petition to sell. That petition was filed in the county court on October 9, 1911. It

is contended, and there was some evidence in the district court tending to prove, that she did not know the contents of this instrument or understand the purport thereof and that she was induced to execute it by reason of certain inducements offered her by the guardian which constituted fraud as to the minors, but under the view we take of this case it is not necessary to enter into a discussion of that contention.

On October 9, 1911, the guardian filed in the county court of Wagoner county a similar petition for each minor, verified upon information and belief.

On October 9, 1911, the county court of Wagoner county ordered the guardian to sell the allotment of the plaintiff at public sale. No notice of the hearing of the petition to sell real estate was given. A similar order was made, under the same circumstances and at the same time, for the sale of the allotment of George Tucker.

No appraisement of the land was made.

On November 14, 1911, C. K. Leslie filed in the county court of Wagoner county returns of sale stating that on November 6, 1911, he had sold the George Tucker allotment to J. C. Casaver for $325, and that he had sold the Fred Tucker allotment to J. C. Casaver for $325. Neither return stated that the land had been sold at public sale or where the sale had been made.

It was contended in the trial of this action, in the district court, and there is ample evidence to sustain the contention, that these returns were false in that J. C. Casaver never at any time offered to purchase either of the allotments at any price. A continuance was taken by defendants for the purpose of procuring the testimony of the guardian and his attorney to rebut the testimony of J. C. Casaver, but the testimony of neither of these persons was presented and the record shows no excuse for the failure to present their testimony. However, in view of our conclusion in this matter, we do not deem it necessary to discuss this contention further.

The returns of sale were set for hearing on November 29, 1911, and on that date defendant in error M. B. Leonard filed in the county court of Wagoner county a written bid of $400 for the allotment of George Tucker and $400 for the allotment of Fred Tucker. Those bids were in one instrument, and the instrument contained the following statement:

"That above bid is submitted subject to a good and perfect title free and unincumbered."

On that date the county court made the following order (caption and signature omitted) :

"Order of Continuance.

"On this the 29th day of November, 1911, the same being the day set for hearing upon the return of the sale of real estate herein, said hearing of return of sale herein is by the court continued until the 9th day of December, 1911, at 10 o'clock a. m."

On December 9, 1911, the hearing was continued by a similar order to the 18th day of December, 1911; on December 18, 1911, it was continued by a similar order to January 2, 1912, and on January 2, 1912, it was continued by a similar order to February 3, 1912. On February 3, 1912, the return of sale came on for hearing, and the court found that the guardian had sold the Fred Tucker allotment to J. C. Casaver for $325, and

"* * * the hearing upon said returns of sale herein having been continued from time to time as shown by the order of this court for a higher and better bid, and the last continuance of said court upon the hearing of said return of sale herein being set for this 3rd day of February, 1912, said land was put up in open court for a higher and better bid, and the said bid of $325 being raised and reraised and M. B. Leonard offering the sum of $855 for said land and the said sum of $855 being the highest and best sum bid for said land, the said M. B. Leonard was declared the purchaser of said land for the said sum of $855."

The proceedings in the George Tucker sale were identical except the order of confirmation thereof showed the purchase price to be $720.

Following the making of these orders the guardian executed and delivered a deed to the Fred Tucker allotment to M. B. Leonard, and that deed was filed for record on March 5, 1912.

A sale of land by a guardian pursuant to an order of a county court is a judicial sale, and the rule of caveat emptor applies. Brown v. Thompson, 73 Okla. 238, 175 Pac. 931; In re Standwaitie's Estate, 73 Okla. 255, 175 Pac. 542. In the latter case the court refused to determine whether an increased bid need be in writing, and said:

"Be that as it may, we think the contention in behalf of the guardian that the bid offered by the plaintiff in error was conditioned upon the state of the title of the ward is fatal to the confirmation of this sale. By the great weight of authorities it is settled that the rule of caveat emptor applies

to judicial sales. 24 Cyc. 57; King v. Gunnison, 4 Pa. 171; Halleck v. Guy, 9 Cal. 181, 70 Am. Dec. 643; Lewark v. Carter, 117 Ind. 206, 20 N. E. 119, 3 L. R. A. 440, 10 Am. St. Rep. 40; Stonerook v. Wisner (Iowa) L. R. A. 1915E, 834, note. It is also settled that a sale of real estate by a guardian, under the order and subject to the confirmation of the probate court, is a judicial sale. Halleck v. Guy, supra. This being the rule of law, the guardian in the case at bar could offer to sell, and the probate court could order him to sell, only the interest which his ward might have in the real estate in controversy, and any person buying at said sale would buy at his peril; and if he were the successful bidder, and the sale were confirmed to him, he would take only the title that the ward might have to such real estate.

"* * * It seems clear to us that this being a judicial sale, nothing but an unconditional bid could be considered * * *"

—and that rule is supported by the authorities therein cited. The Supreme Court of California in Re Bradley's Estate, 144 Pac. 136, said:

"We think, however, that the appellants are right in their contention that the bid of Tobin was not one which the court was authorized to accept. The order of sale authorized the administratrix to sell for 'cash, in gold coin of the United States, ten per cent. of the purchase price to be paid * * * at the time the bid therefor is accepted; the balance * * * to be paid upon confirmation of the sale.' Tobin's offer declared upon its face that it was made upon the 'assurance' that the money paid by him to Going should be refunded, and that one-half of the purchase price, or $2,750, was not to be paid until it had been returned to him. This was, in effect, a condition attached to the offer. Such condition deprived the offer of the absolute character which the terms of the order of sale, and the nature of the transaction, required."

The only jurisdiction that a county court has is to decree the sale of such interest, whatever it may be, as the ward may have in the property decreed to be sold. Strawn v. Brady, 84 Okla. 66, 202 Pac. 505.

The written bid of M. B. Leonard was conditional and could have been enforced only in the event that the title to the land was perfect, free and unincumbered. It was not a bid as is contemplated by the probate procedure of Oklahoma; it was not one which the court was authorized to accept, and, under the authorities hereinbefore cited, that bid amounted to nothing.

Upon the hearing of the return of the sale of the real estate it was the duty of the court to examine the return and the witnesses in relation to the same, and, if the proceedings were unfair, or the sum bid disproportionate to the value, and if it appeared that a sum exceeding such bid at least ten per cent., exclusive of the expenses of a new sale, might be obtained, the court might have vacated the sale and directed another to be had, to be conducted as if no previous sale had taken place. Section 1282, C. O. S. 1921. If the Leonard bid had been absolute and had conformed to the statute, the county court would have been authorized to vacate the sale and to direct another sale to be had to be conducted in all respects as if no previous sale had taken place, or, to accept the Leonard bid. Section 1282, supra.

While our statute, section 1287, O. O. S. 1921, provides for a postponement of a sale from time to time, not exceeding in all three months, notice thereof must be given by public declaration at the time and place first appointed for the sale, and if the postponement be for more than one day, further notice must be given by posting notices in three or more public places in the county where the land is situated or by publishing the same, or both, as the time and circumstances will admit. Section 1288, C. O. S. 1921. While these statutes are not directly in point, we think they are highly persuasive and show the legislative intent.

This record shows that the county court neither vacated the sale nor accepted the Leonard bid, but continued the hearing "for a higher and better bid." While the court did not say so in words, it said by its actions that it refused to confirm the sale to Casaver and it refused to accept the Leonard bid and confirm the sale to him, but continued the hearing "for a higher and better bid." This, we think, was beyond the jurisdiction of the court.

The record does not show any subsequent bid by Leonard, and the fact that he made a subsequent bid of $855 appears only in the order of confirmation, wherein the court said that on February 3, 1912,

"* * * said land was put up in open court for a higher and better bid, and the said bid of $325 being raised and reraised and M. B. Leonard offering the sum of $855 for said land and the said sum of $855 being the highest and best sum bid for said land, the said M. B. Leonard was declared the purchaser of said land for the said sum of $855."

That record shows a pretended sale on February 3, 1912, after the alleged public sale on November 6, 1911, and that proceed-

ing could constitute nothing more than a sale without appraisement.

A county court is without authority to continue a hearing on a return of a public sale of real estate over a period of two months, and then sell the land, without appraisement or notice, in open court, to an individual who did not participate in the public sale. To announce such a rule would not only open the door to fraud of the grossest character and permit prospective purchasers to speculate upon an increase in value by reason of the development of a potential oil field or otherwise, but would deprive the bidder at the public sale of the benefit of his purchase, by reason of subsequent changes in the conditions or value of the property. That would be judicial legislation.

It must be kept in mind that this land was in the Cushing oil field and that there was a tremendous increase in the value thereof due to oil development.

When land is offered for sale at public sale the bids made therefor must be considered on the basis of the value of the land at the time of the sale, and if subsequent oil development or any other change in conditions increases the value of the property before confirmation of the sale, the county court has the right to refuse to approve the sale made at public sale, but he cannot postpone the confirmation of the sale for the purpose of determining whether or not there will be a higher and better bid made at some later date.

The Supreme Court of California in the case of Re Leonis' Estate, 71 Pac. 171, said:

"The appellant had become the purchaser of the property subject to the supervision of the court, and certainly had rights which could not be lightly thrown aside or disregarded. He was responsible for the amount of his bid, and might have been compelled to stand by it. Even if the property had depreciated or become valueless after the bid and before the confirmation, this would not relieve him; and, while he had assumed certain obligations as a purchaser, he obtained certain legal rights which are to be as much protected and enforced as the rights of other persons. He became entitled to have the sale confirmed, if there was no valid reason within the law why it should not have been. Dunn v. Dunn (filed July 22, 1902) 69 Pac. 847.

"It is provided in the Code of Civil Procedure (section 1552): 'Upon the hearing, the court must examine the return and witnesses in relation to the same, and if the proceedings were unfair, or the sum bid disproportionate to the value, and it appear that a sum exceeding such bid at least ten per cent., exclusive of a new sale, may be obtained, the court may vacate the sale and direct another to be had.' The above is the only provision of the Code to which our attention has been called which authorizes the court to vacate the sale. The court must examine the return and witnesses, and, before the sale can be set aside, it must appear that a sum exceeding such bid at least 10 per cent. may be obtained. The words 'exclusive of a new sale' appear meaningless. Evidently by mistake, the words 'the expenses of,' which were in the old section, were left out of the section when amended in March, 1891. In addition to the fact that it must appear that a sum exceeding such bid at least 10 per cent. may be obtained, it must also appear either that the proceedings were unfair, or that the sum bid was disproportionate to the value. 'Disproportionate to the value' means disproportionate to the value at the time of the bid. It would not be sufficient for the court to merely find that a sum exceeding the bid 10 per cent. may be obtained, but it must also find that the bid at the time it was made was disproportionate to the value, or that the proceedings were unfair."

This court, in Brown v. Thompson, supra, held that the purchaser of real estate sold by a guardian under order of court is liable to pay any deficiency to the estate after a resale thereof caused by the refusal of the purchaser to comply with the terms of the sale at which he became the purchaser. If a bidder at a public sale of real estate by a guardian under order of court is to be held liable for his refusal to pay the purchase price therefor (he is made liable by section 1284, C. O. S. 1921), then that bidder is entitled to have the sale confirmed or vacated so that he may have the benefit of his bid or be relieved from responsibility. To permit the county court to speculate upon oil development or other things tending to increase the value of the property and continue the hearing of the return of a sale of real estate for a higher and better bid on the property, is to give the county court the authority, at a later date and if subsequent developments have depreciated the value of the property, to confirm the sale to the original bidder and force him to complete the same or become liable for the damage resulting therefrom.

If the county court could continue a hearing four times, for a period of two months and three days, for the purpose of "procuring a higher and better bid," it could continue such a hearing 40 times, for a period of one year, for the same purpose. The statutes of Oklahoma do not contemplate or authorize any such procedure.

Before a county court can approve a sale of real estate by a guardian it must have jurisdiction of the person and of the subject-matter and jurisdiction to make the particular order in question. Conceding that this county court had jurisdiction of the person and subject-matter, it had no jurisdiction to confirm a sale made in the manner in which this sale was attempted to be made.

On May 19, 1916, the plaintiff and George Tucker, by J. L. C. Gowan and Ella Tucker as their "next friends," filed separate suits in the district court of Creek county for the recovery of their allotments so sold. The pleadings in each cause were identical except as to names and descriptions. The amended petition of the plaintiff alleged his minority, his tribal status and the allotment of the land to him as a Creek freedman, and attacked the guardian's proceedings as to the appointment and sale. General demurrers were sustained to those amended petitions. The plaintiffs stood on the amended petitions. The causes were dismissed and appeals were taken by the plaintiffs to this court. This court reversed the judgments of the trial court and remanded the causes. Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907.

This court therein held that the trial court was in error in sustaining those demurrers, and reversed the judgments. The decision of this court is nothing more than a determination that the amended petitions stated a cause of action. Under the rule announced by this court, the demurrers to the amended petitions should have been overruled if any paragraph of the pleadings stated a cause of action. Blackwell Oil & Gas Co. v. Whitesides, 71 Okla. 41, 174 Pac. 573. When the causes were returned to the trial court, they had the same status as though the trial court had overruled the demurrers to the amended petitions. The rules of law announced in that case became and are the law governing this procedure, but apply only where the facts are the same in both cases, and do not apply to facts not called to the attention of the court at that time. Missouri, K. & T. Ry. Co. v. City of Tulsa, 113 Okla. 21, 238 Pac. 452. The court had before it at that time only the amended petitions, the general demurrers, and the judgments. The amended petitions show a part of the procedure in the county court, including petitions for a public or private sale, orders for a public sale and notices of a public sale, and orders of confirmation which recited that the sale was a public sale. This court held that the pleadings showed a public sale rather than a private sale, but the opinion nowhere discussed the effect of the sale procedure. Nothing was said therein in regard to the various continuances of the hearing of the return of the sales, or the effect thereof. The written bid of M. B. Leonard was not pleaded and was not considered by the court. Nothing was said therein as to the authority of the county court to confirm a sale made in the manner in which these sales were made. That case determined that the same was public rather than private and that the amended petitions stated a cause of action, but it is not a determination of the validity of the sale in question. The court could not have made that determination on a hearing of a general demurrer to a petition and at the same time sustain the petition.

The validity of a sale of real estate by a guardian under order of court is a question of fact to be proven by showing the sale proceedings. When the proceedings are shown, the effect thereof is a question of law. If the proceedings are only partially shown, the pleader, upon remand of the cause, has a right to amend the pleading to show that portion of the proceeding not theretofore shown. That was done in this case. The proceedings, in this case, show probate proceedings that were not before the court in the former case. The effect in law of the probate proceedings now shown is materially different from the effect in law of the probate proceedings then shown. For instance, this court may then have been of the opinion that the filing of a valid bid on the hearing of the return of the sale of the real estate authorized the court to continue the hearing for a higher and better bid and operate as a rejection of the bid at public sale, though the court did not so say or hold, but it now appears from an examination of the bid itself, which was not shown in the former case, that that bid was not valid. Had the court then held that the pleadings in that case showed that the sale proceedings were valid, that holding would not be controlling in view of the different situation presented by the record now before this court.

The defendants contend that a final judgment of a court of competent jurisdiction is conclusive between the parties and their privies in a subsequent action involving the same subject-matter, not only as to all matters actually litigated and determined in the former action, but as to all matters germane to issues which would or might have been litigated and determined therein, and they cite authorities in support thereof, but that rule does not apply to the consideration of a demurrer to a pleading. The "law of the

case" rule has reference only to questions of law and not to questions of fact. Missouri, K. & T. Ry. Co. v. City of Tulsa, supra. In that case, this court held:

"The doctrine of 'the law of the case' is not applicable nor controlling in a second appeal, where issues of fact and rights of different parties are involved in a second appeal which were not involved and determined in the first appeal"

—and held:

"But a rigid application of such doctrine to all cases wherein the merits of the case were determined in the former appeal has not been favorably adhered to by this court, especially where the merits are only incidentally determined in passing upon some interlocutory order. Herring v. Wiggins, 7 Okla. 312, 54 Pac. 483; Kuchler v. Weaver, 23 Okla. 420, 100 Pac. 915; Johnson v. Taylor, 68 Okla. 229, 173 Pac. 1039; Woodmen of the World v. Bridges, 37 Okla. 430, 132 Pac. 133; State Bank v. City Nat. Bank, 26 Okla. 801, 110 Pac. 910. Nor has it been favorably adhered to in other courts. 4 C. J. 1093 to 1096, and cases cited in notes. Nor has it been regarded as controlling even in the same case where the facts and issues are different in a subsequent appeal from what they were in the former appeal. 4 C. J., supra. The foundation of the rule is the policy to finally determine controversies and end litigation. Sharon v. Sharon, 79 Cal. 633; Odgen v. Larrabee, 70 Ill. 510; First Nat. Bank v. Farmers Bank (Neb.) 95 N. W. 1062; Kramer v. Southern Ry. Co. (N. C.) 38 S. E. 872; Stager v. Troy Co. (Ore.) 68 Pac. 405; Roberts v. Cooper (U. S.) 15 L. Ed. 969; Standard Sew. Mch. Co. v. Leslie (U. S.) 55 C. C. A. 323; Mangold v. Bacon (Mo.) 141 S. W. 650."

This court, in McIntosh v. Lynch, 93 Okla. 174, 220 Pac. 367, held:

"Where a cause is reversed and remanded by the Supreme Court, with directions to the trial court to take such other and further proceedings in the matter as shall accord with said Supreme Court opinion, it stands in the court below the same as if no trial had been had. Pleadings could be amended, supplementary pleadings filed, and new issues formed under proper restrictions. If the parties could amend their pleadings in such a way as to conform to the views of the Supreme Court in relation to the allegation of facts necessary to entitle them to the relief sought, they ought not to be deprived of that right merely because they and the trial court had previously been in error as to the theory of the case. The court below, in justice to the parties, should permit such amendments upon such terms as to costs as it thought just, and it is reversible error to refuse to do so. Ball v. Rankin, 23 Okla. 801, 101 Pac. 1105."

The cases cited by the defendants are not controlling. See, also, Miller, Adm'r, v. Tidal Oil Co., 130 Okla. 133, 265 Pac. 648; Southwestern Surety Ins. Co. v. Fariss, 118 Okla. 188, 247 Pac. 392; Miller, Adm'r, v. Tidal Oil Co., 106 Okla. 212, 233 Pac. 696; Sandlin v. Barker, 95 Okla. 113, 218 Pac. 519; Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729; Tiger v. Read, 60 Okla. 106, 159 Pac. 499, and Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329.

The plea of res adjudicata in this case was by the defendants and the burden was upon them to establish it. Estate of Hilderbrand, 81 Okla. 197, 197 Pac. 445.

We find nothing in the former decision of this court that precludes this court from determining that the county court of Wagoner county was without jurisdiction to confirm a sale made in the manner in which these sales were made.

The defendants contend that the plaintiff, by and through his "next friends" and attorneys, negotiated a settlement with the defendants by which Shaffer paid $2,000 and Jones paid $1,500 in settlement of the two cases and that those settlements were approved by the district court of Creek county and the causes were dismissed with prejudice. The order of dismissal as to Shaffer recites that plaintiff has agreed to accept $2,000 in full settlement and satisfaction of his claim and alleged cause of action against Shaffer, which sum has been paid, "and it further appearing that said settlement is to the best interest of said plaintiff, the court finds that said motion should be sustained," and ordered

"That the above-entitled action be dismissed as against the defendant Charles B. Shaffer, with prejudice against the bringing of another suit against the said Charles B. Shaffer."

The order of dismissal as to Jones finds that plaintiff has agreed to accept $1,500 in full settlement and satisfaction of his claim and alleged cause of action against Jones, which sum has been paid, "and it further appearing that said settlement is to the best interest of said plaintiff, the court finds that said motion should be sustained," and ordered

"That the above-entitled actions, and each of them, as against the defendant Barnard B. Jones, or B. B. Jones, be, and the same are hereby dismissed with prejudice against the bringing of another suit against the said Barnard B. Jones, or B. B. Jones. It is further ordered that this journal entry be entered in each of the above-entitled causes."

Defendant contends that these instruments constitute dismissals on the merits, and that they are binding and conclusive upon the parties thereto, and are bars to further litigation between the parties thereto upon the same subject-matter. In support of that contention they cite Turner v. Fleming, 37 Okla. 75, 130 Pac. 551. That case did not involve the rights of a minor. There is nothing therein to the effect that an attorney or the "next friend" of a minor may settle and compromise the rights of the minor without the approval of the county court having jurisdiction of the estate of the minor. Defendants then contend that, since those orders are final judgments, they may be vacated only in the manner provided for the vacation of judgments, which, it is admitted, was not done in this case. If those orders constitute valid judgments, the defendants are correct in their contention. On the other hand, if the orders are void, the defendants are wrong in their contention. The defendants cite the case of Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, which holds that a judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll, and is not void, in the legal sense for want of jurisdiction, unless its invalidity appears on the face of the record.

The judgment roll in that case discloses that the plaintiff was a minor Creek freedman; that the land involved was his allotment; that he was prosecuting the action by his "next friend"; that the action involved his allotment; that the "next friend" made a settlement with the defendants for a sum of money by which the "next friend" agreed that the action might be dismissed with prejudice, and that, pursuant thereto, the trial court found it to be for the best interest of the plaintiff that the cause of action be compounded and settled. That court had jurisdiction of the subject-matter and of the parties, and there is but one question and that is, Did that court have jurisdiction to make the order dismissing the cause "with prejudice"? Defendants insist that no approval by the county court of Wagoner county was necessary, for the reason that the county court of Wagoner county had already approved the sale of the real estate.

The plaintiff contends that the jurisdiction of the district court of Creek county was to try and determine the issues presented by the pleadings, which was whether or not Shaffer and Jones or either of them owed plaintiff anything, and whether or not the guardian's deed was valid, and that, since the district court did not attempt to adjudicate those issues and only attempted to approve an agreement made by the "next friend" of the plaintiff and the defendants, the orders are void upon their face in so far as they purport to dismiss the actions "with prejudice." The testimony shows that at the time those orders were made there was no one present except the attorneys for the defendants. Plaintiff contends that by the act of Congress he was restricted by reason of his minority and that neither he nor his "next friend" had any authority at law to settle the issue between the plaintiff and defendants.

In Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, the plaintiff sought to have declared null and void a decree of the district court of Nowata county conferring rights of majority upon an heir, and to have canceled and set aside certain stipulations and orders of dismissal entered in certain suits brought in her name by a guardian. She was a Cherokee Indian of less than one-half blood. The defense was that her guardian entered into an agreement that no further claims would be made and that the action would be dismissed, which was thereafter done. This court said:

"The effect which counsel seek to give the purported orders of dismissal is to divest the title of plaintiff in and to the lands in question and reinvest it in defendant. While they say that it amounts to a judgment quieting title, this is another way of saying that the void deed is given validity and effectiveness in this indirect way when such deed is an absolute nullity. Defendant had no title which could be quieted, and the district court had no jurisdiction to effect a transfer of the plaintiff's title to her restricted lands to defendant in such manner. Neither can defendant by any device or scheme acquire that title in violation of the public policy of the United States, as expressed in the various acts of Congress affecting matters of this character"

—and:

"If the contention of defendant be correct, it would be an easy matter to procure a conveyance from a minor to his allotted lands, which is conceded to be void, and by causing suit to be brought by said minor, or by some person in his behalf, and then entering into an agreement to dismiss said suit for a nominal consideration—as in the present instance, for the sum of $1—secure a dismissal of said suit, and thereby obtain title to said restricted lands. This cannot be done"

—and:

"And so, in the present case, when it was disclosed by the pleadings in the litigation, and also by the enrollment records of the Commissioners of the Five Civilized Tribes,

that plaintiff was at all those times a minor, and that her lands had not been sold in the county court in the manner required by law, the question of her age and the alienability of her lands, or the validity of the conveyance executed by her in violation of law, were not questions which could be submitted to that court for determination, but such questions were conclusively foreclosed by the legislation of Congress in reference thereto. Plaintiff, not being capable in law of executing a conveyance of her allotted lands, was equally incapable of entering into an agreement whereby the validity of such conveyance should be submitted to that court for determination; and the court being without jurisdiction to give validity to such void conveyance by a decree in such litigation, a mere order of dismissal, entered therein, could not have that effect. Neither could plaintiff's guardian enter into any such agreement, nor could he confer any such jurisdiction upon the court."

See, also, Tidal Oil Co. v. Flanagan, supra, and Cotton v. McClendon, 128 Okla. 48, 261 Pac. 150. A guardian cannot make a contract which will bind the person or the estate of his ward unless authorized by a court of competent jurisdiction to enter into said agreement. William Cameron & Co. v. Yarby, 71 Okla. 79, 175 Pac. 206.

These orders are not and do not purport to be judgments upon the merits. They are not and do not purport to be a determination of the rights of the plaintiff. They are at best only the conclusion of the court that it would be for the best interest of the plaintiff to take the money rather than to try his lawsuit.

In Lowery v. Richards, 120 Okla. 261, 248 Pac. 622, one of the questions was, Did the guardian have authority to bind his ward by a stipulation confessing judgment and quieting title in the defendant. As therein pointed out, section 280, C. O. S. 1921, provides that the guardian of a minor shall deny all the material allegations of a petition prejudicial to the minor defendant, and this court said:

"We cannot construe the law to be that, while a guardian must deny, in his answer, all the material allegations in plaintiff's petition, he may turn the case for quieting title 'face about,' and by filing his petition on behalf of the ward, come in and confess judgment by stipulation, quieting title in defendant, and this court has never committed itself to such a construction.

"In Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 Pac. 231, the guardian brought action against the Title Guaranty & Surety Company and the American Surety Company, which last-named company filed its counterclaim for $78, premiums due on the former guardian's bond, and it was stipulated that this sum should be offset against judgment in favor of the guardian. On appeal this court said:

"'The stipulation was evidently founded on a mistaken view of the legal rights of the infant, and is not binding on the court. The guardian cannot irrevocably waive a legal right of his ward. * * * The court is not bound by that stipulation.' Johnson v. Thornburg (pending on rehearing); Pinchback v. Graves, 42 Ark. 222; McCloy & Trotter v. Arnett, 47 Ark. 445; Branch v. Mitchell, 24 Ark. 431; Burt v. McBain, 29 Mich. 261; Driver v. Evans, 47 Ark. 297; Knights Templars v. Crayton, 209 Ill. 550; Cochran v. McDowell, 15 Ill. 10; Whitehead v. Jones, 56 Ala. 152; Schamleffer v. Council Grove Peerless Mill Co., 18 Kan. 24; Cummings v. Byrd, 33 Cin. Bul. (Ohio) 332; Hobbs v. Nashville, C. & St. L. R. Co., 122 Ala. 602, 26 So. 139, 82 A. S. R. 103."

In Griffin v. Galbraith, 114 Okla. 208, 247 Pac. 339, this court held that an action of an attorney, in compromising a suit involving the land of minors, and the judgment rendered thereon, is not a bar to subsequent actions to recover the land, and, in commenting upon the authority of the "next friend" and the effect of the judgment rendered upon compromise, said:

"This court in passing upon this question in the case of In re Sanders' Estate, 67 Okla. 3, 168 Pac. 197, says: 'It is the duty of courts to guard with jealous care the interests of minors in actions involving their rights. No presumption can be permitted against an infant, but, on the contrary, every presumption must be indulged in his favor, and a guardian ad litem or other person representing such minor must see to it that every question available is urged on behalf of said minor, and in case of a failure to discharge this duty, it becomes the imperative duty of the court to see that the infant's rights are protected.'

"The same policy was again expressed in the first paragraph of the syllabus in Bolling v. Campbell, 36 Okla. 671, 128 Pac. 1091.

"The action of the attorneys in this cause, as disclosed by the record, in attempting to compromise said suit was a fraud upon said minors and of no binding force or effect."

The jurisdiction of the district court of Creek county was limited to a determination of the issue presented by the pleadings in that case. It was the duty of that court to render a judgment for or against the plaintiff without regard to whether or not it was for the best interest of the plaintiff. As a matter of fact, the best interests of the plaintiff were not involved in that controversy, and when that court was asked to ap-

prove a settlement between a "next friend" and the defendants, it was the duty of the court to decline to make any order with reference to that matter. The orders made were beyond the jurisdiction of the court and were void.

During the year 1924, the date not being shown by the record, the plaintiff commenced another suit in the district court of Creek county against the defendants in error, and that suit was dismissed without prejudice.

On October 9, 1926, the plaintiff filed a new action in the district court of Creek county and George Tucker filed a new action therein against the defendants in error. These actions were tried as one, both were decided in favor of the defendants in error, and appeals were taken to this court, where both are now pending. Charles B. Shaffer was not a defendant in the George Tucker case. The plaintiff sought to set aside the guardian's deed to his allotted land, recover the same, quiet title thereto and an accounting, and he alleged his tribal status and allotment, the date he reached majority, and a claim of ownership of the land. There was no attack made upon the appointment of the guardian, and the attack was limited to the guardian's sale of the real estate and the subsequent conveyances. It is alleged that the sale was void for the following reasons: First, that no notice was given the next kin of the plaintiff of the application for the order of sale; second, that there was no appraisement of the land; third, that no bids were received at public sale and the land was not sold at public sale; fourth, that the consent of the mother to the sale was obtained by fraud, and the alleged fraudulent acts were set forth; fifth, that the sale to M. B. Leonard was a private sale.

To those petitions Bernard B. Jones answered with a general denial and an admission of the allotments and disclaiming any interest in certain portions of the land. He admitted the guardianship sale to Leonard; denied any fraud therein; denied that Leonard was a party to any fraud; denied that Leonard had any knowledge of any fraud or any facts or circumstances sufficient to impute knowledge of fraud to him; alleged that Leonard purchased in good faith and paid the purchase price; alleged that Leonard conveyed to him and that he took without knowledge in good faith and for value. The judgment of the Supreme Court on the former appeal and the dismissal with prejudice by the district court were set up as defenses, the filing of the suit in 1924 was alleged as a defense, and the statute of limitations was pleaded.

Charles B. Shaffer filed his answer, similar to that of Bernard B. Jones except that he did not specifically plead that he was an innocent purchaser for value.

For reply the plaintiff alleged that at the time of the alleged settlement he was a minor and the settlements were not approved by the county court having jurisdiction of the estate; that there was no trial upon the merits of the action, and that his attorneys had no right to make such a settlement.

The trial court found and adjudged the issues in favor of the defendants and against the plaintiff, from which order, after motion for new trial was overruled, an appeal was taken to this court.

The plea of the statute of limitations is not available to either Jones or Shaffer, for the reason that they are each nonresidents of the state of Oklahoma. The record shows that the defendant Shaffer is a resident of the state of Illinois and the defendant Jones is a resident of the city of Washington, D. C. The statute of limitations does not run in favor of a nonresident of the state until summons can be served within the state and a valid personal judgment be had which can be enforced in a mode provided by law. Bean v. Rumrill, 69 Okla. 300, 172 Pac. 452; Knupp v. Hubbard, 130 Okla. 111, 265 Pac. 133. There is nothing in this record to show the presence of the defendants in error in this state to affect the suspension of the statutes of limitation.

This action was instituted within three years after the plaintiff became of age. Plaintiff contends that it was instituted under the provisions of section 1496, C. O. S. 1921, which reads as follows:

"No action for the recovery of any estate, sold by a guardian, can be maintained by the ward, or by any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise, at the time when the cause of action accrues, within three years next after the removal thereof."

Section 1496, supra, is part of the probate procedure of Oklahoma, and this court has held that the right of the minor thereunder is a material subsisting valid right given to the minor by the statutes of Oklahoma. Campbell v. Hickory, 137 Okla. 235, 278 Pac. 1088.

The allegations of this petition are that those deeds are void. We have so determined, and hold that this is a direct attack thereon and that the plaintiff may maintain the action.

The defense of innocent purchaser must be pleaded and proven (McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739; Bigpond v. Page, 125 Okla. 282, 257 Pac. 793), and has no application where the sale is shown by the record to be void. Jones v. Snyder, 121 Okla. 254, 249 Pac. 313.

When the defendant Leonard entered the picture he was charged with notice that the guardian had reported a sale of the land to Casaver for $325. He made a conditional bid of $400. Under the statutes he was without authority to bid unless his bid was at least ten per cent. in excess of the bid at public sale exclusive of the expense of a new sale. His bid was not in that amount and was conditional upon the title to the land. He was charged with knowledge of the inefficacy of his bid. When he went back and made another bid, after four continuances for a period of more than two months, he was charged with knowledge of the fact that the transaction did not conform to the statutory procedure. He was an interloper and paid his money with notice. That record was not only notice to him, but it was notice to all subsequent grantees. They cannot contend that they are innocent purchasers of this property. This court in Hatfield v. Lotty, 48 Okla. 173, 149 Pac. 1171, said:

"He claims to have bought upon the strength of the record title, and without any actual knowledge of the idiocy of the original grantor; but it must be admitted that he is chargeable with all the notice that is brought to him by the record upon which he relies. If this record is such and contains matters that would put an ordinarily prudent purchaser in doubt of, and upon inquiry into, the want of capacity of his grantor, then the law will charge him with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him. Section 2926, Rev. Laws 1910, provides: 'Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.'

"In elaborating upon the rule announced in this statute, which but gives expression to the common law, the Supreme Court of the United States, in the case of Wood v. Carpenter, 101 U. S. 141, 24 L. Ed. 809, says: 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.' Kennedy v. Green, 3 Myl. & K. 722. 'The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it' "

—and in Winstead v. Shank, 68 Okla. 269, 173 Pac. 1041, said:

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

The rights of a minor are protected by the statutes of Oklahoma and by the decisions of this court, and one who purchases at a a guardian's sale or from a purchaser at a guardian's sale must take notice, at his peril, of the authority of the guardian to make the sale. Lowery v. Richards, supra; Burton v. Compton, 50 Okla. 365, 150 Okla. 1080; Jackson v. Carroll, 86 Okla. 230, 207 Pac. 735.

On March 16, 1912, M. B. Leonard conveyed the southeast quarter of the southwest quarter of section 3, township 17 north, range 7 east, being a part of the Fred Tucker allotment, and 40 acres of the George Tucker allotment to Thomas B. Slick for a consideration of $800 for the 80 acres. On September 18, 1912, M. B. Leonard sold the remaining 120 acres of the Fred Tucker allotment to Bernard B. Jones for $2,000. On September 14, 1912, Thomas B. Slick sold the 40 acres of the Fred Tucker allotment to Charles B. Shaffer for $400 and the 40 acres of the George Tucker allotment to Bernard B. Jones for $400. As a result of these transactions Bernard B. Jones acquired the record title to 120 acres of the Fred Tucker allotment and Charles B. Shaffer acquired the record title to the 40 acres of the Fred Tucker allotment.

The Prairie Oil & Gas Company drilled the 80 acres conveyed by Slick to Shaffer and Jones, and discovered oil thereon and Charles B. Shaffer received from the Fred Tucker allotment, for his one-eighth royalty, up to November 15, 1927, the sum of $221,936.30. The Prairie Oil & Gas Company, on January 5, 1924, paid Charles B. Shaffer for an extension of the oil and gas lease on said land, which was about to expire, the sum of $100,000.

Charles B. Shaffer did nothing to improve the property or enhance its value and testi-

fied that he knew nothing whatever about the land.

These payments are not disputed and there is nothing in the pleadings or proof to show any offset thereto.

We cannot see wherein any useful purpose will be served by returning the case to the trial court for determination of those questions.

"In a purely equitable proceeding this court will examine the record and render such judgment as should have been rendered in the trial court." Dieterle v. Clum, 130 Okla. 5, 264 Pac. 887; Myers v. Myers, 130 Okla. 184, 266 Pac. 452; Feyerherm v. Feyerherm, 128 Okla. 147, 262 Pac. 199.

We therefore find that the defendant M. B. Leonard, on February 3, 1912, paid plaintiff's guardian the sum of $855, and on March 16, 1912, he received for 40 acres of the plaintiff's allotment the sum of $400, and on August 23, 1912, he received for 120 acres of plaintiff's allotment the sum of $2,000, leaving a balance due the plaintiff of $1,545, for which amount, with interest at the rate of six per cent. per annum from August 23, 1912, plaintiff should have judgment. We further find that the defendant Charles B. Shaffer received royalty payments from the plaintiff's allotment from December 3, 1913, to November 15, 1927, in the sum of $221,936.30; that he received from a renewal of an oil lease on plaintiff's allotment on January 5, 1924, the sum of $100,000; that he paid for the deed the sum of $400 on September 14, 1912; that he paid to the "next friend" of the plaintiff on May 10, 1921, the sum of $2,000, and that plaintiff is entitled to recover from him the sums so received by him, with interest thereon at the rate of six per cent. per annum from the date of receipt thereof, less the sum so paid by him, with interest thereon at the rate of six per cent. per annum from the dates of payment thereof.

The judgment of the trial court is reversed, and this cause is remanded to the district court of Creek county, Okla., with instructions to render a judgment in favor of plaintiff and against the defendant Charles B. Shaffer in the amount herein found due and owing; to render a judgment in favor of the plaintiff and against the defendant M. B. Leonard in the amount herein found due and owing; to vacate, cancel, and set aside the order of confirmation of the guardian's sale and the guardian's deed to the defendant M. B. Leonard, and all of the conveyances from M. B. Leonard and his grantees, except only the oil and gas mining lease to the Prairie Oil & Gas Company; to quiet and confirm the title to the land involved in this action in the plaintiff, free and clear of the claims of any of the defendants herein, and to assess the costs of this action, including this appeal, against the defendants.

The trial court is further directed to require an accounting of the proceeds of the oil taken from this land since the 15th day of November, 1927, and to render judgment therefor.

MASON, C. J., and CLARK, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and HUNT and RILEY, JJ., absent. HEFNER, J., dissents.