CORLEY *v.* MYERS *et al.*

(In Banc. May 14, 1945. Suggestion of Error Overruled June 11, 1945. Motion to Correct Decree Overruled Sept. 24, 1945.)

[22 So. (2d) 234. No. 35831.]

J. C. Floyd and A. B. Amis, Sr., both of Meridian, and L. G. Spivey, of Canton, for appellant.

J. R. Buchanan, of Laurel, for appellees.

**J. R. Buchanan**, of Laurel, for appellees, on suggestion of error.

Argued orally by **A. B. Amis, Sr.**, for appellant, and by **J. R. Buchanan**, for appellees.

**Alexander, J.**, delivered the opinion of the court.

Appellees are the minor children and wards of Cora Bradford, guardian, who filed her petitions for authority to execute a mineral lease and to convey a one-half royalty interest in the following property: NE¼ of the NW¼; and five acres in the Northeast corner of the NW¼ of NW¼; and S½ of the NW¼, less five acres out of the Northwest corner thereof; all in Section 29, Township 1 North, Range 13 East, in Jasper County.

The petition for the mineral lease was filed under authority of, and in compliance with, Code 1942, Section 415. The petition exhibited a copy of the proposed lease, and recited the consideration and other terms. There was a hearing thereon, and decree for execution according to the disclosed terms. Lease was executed and delivered to Corley and the recited consideration paid. Cora Bradford individually joined in both the lease and the royalty assignment. An amended lease and royalty deed were later executed, and receipt of consideration acknowledged.

The decree for the lease was signed February 15, 1944, the date of the hearing on the guardian's petitions. As to the royalty interest, a further hearing was set for February 21st, at which time further proof was required and had, and on which date the guardian was authorized by decree to execute conveyance of a one-half royalty interest of the minors. The decree provided that the guard-

ian should "make due report to the chancellor, in vacation, at his office, on March 4, 1944, of her acts and proceedings for confirmation." The decree for execution of the lease required no report for confirmation. Report on the royalty interest was not made on March 4th, but such report was filed on March 24th. There was no decree thereon. On April 22d objections to the confirmation of both the lease and the royalty deed were filed by the guardian and the great-grandfather of the minor, accompanied by bond. The grounds of the objection were (1) lack of jurisdiction, (2) lack of statutory authority to sell a royalty interest, and (3) gross inadequacy of price.

On July 8, 1944, the guardian executed the amended lease and royalty deed, and on said date filed a petition for confirmation, and for process on the minors and the objectors returnable to the August term. On July 28th objections were filed to the confirmation of the amended lease and royalty deed, together with bond.

At the hearing on the objections, the chancellor set aside the decrees for the lease and the royalty deed. In the written opinion of the court, there were made certain findings of fact, among which is the statement "I am not sustaining the exceptions on the ground of inadequacy of the consideration but for the reasons hereinabove stated." The reasons included a finding that "it was the duty of Mr. Corley to disclose to the special chancellor all facts which the special chancellor should know in order to render proper decrees at the hearings on February 15th and February 21st," resulting in a "legal fraud" upon the court. Of these facts more will be said later. The original hearings were held before a special chancellor who decreed the execution of the two instruments. At the August term the objections came on for hearing to the chancellor who had been appointed in the meantime to the existing vacancy.

Although the objection to the jurisdiction of the court was raised by the appellees, who were the successful parties, we deem it proper to advert to the contention that

.the trial court erred in upholding jurisdiction since, if the case be reversed, this challenge would reassert itself. Two of the minors were living at the home of the great-grandfather in Jasper County. The mother and guardian resided in the second district of Jones County. We affirm the chancellor's finding that the jurisdiction followed the domicile of the parent.

The chief issue before this Court concerns the status of the decrees of the special chancellor authorizing the private sale and lease, where the terms were set out, and have been fully executed. Section 415 does not require confirmation of a mineral lease after execution has been authorized. Assuming, but without decision, that a conveyance of a one-half royalty interest is a ''sale of land'' as contemplated by Section 1389, then ''before any deed to land sold at private sale, as authorized by this section, shall become effective, the sale shall be reported to the chancellor, either in term time or in vacation and an order approving such sale placed upon the minutes of the court.'' Prior to the enactment of this section, such sales were upon public bids, and the cognate statutory requirements are to be construed as contemplating such procedure. Where there is a private sale or lease upon terms disclosed to, or required by, the court, and thereby approved, the transaction is confirmed by the decree directing it. There is no uncertainty as to terms or conditions. The decree is not a mere ''interlocutory decree ordering said sale or lease,'' as expressed in Section 1384, but a decree executed after petition and hearing, at which all the terms disclosed by tender of the conveyances are heard and considered and thereby confirmed. To reach this conclusion, we need not accede to the proposition advanced by appellant that such are final decrees. Such definition is here unnecessary. It is sufficient that they are judicial determinations upon complete factual data, and when complied with upon the terms then found satisfactory to the court, there remains no occasion for

the court to reaffirm its assent by further proceedings to confirm.

We do not overlook the requirement of Section 1389 that before a private sale shall become effective, the fact of such sale shall be reported and an order of approval spread upon the minutes. Nor does it escape our attention that the necessity for careful scrutiny by the Court of private sales is indicated as being more often exposed to connivance. We readily assume that these considerations commend themselves likewise to those entrusted to the supervision of minors' business.

That the decrees for lease and sale were not mere authorizations to the guardian to take steps thereunto is indicated by the decree of the learned chancellor, who not only set aside the conveyances, as is appropriate in hearings to confirm public sales, but set aside also the decrees themselves. There is of course no such finality to a decree for private sale as immunizes it to attack upon the ground of fraud of which a gross inadequacy of consideration is an element. Moreover, the chancellor did not find that there was any such inadequacy.

We come then to the issue of legal fraud. It must be shown by clear and convincing testimony, and in this connection we keep in mind that this is an attack upon a decree, and it is for this reason that, even if it is conceded that such an assault can be made upon ground of fraud, we have found it unnecessary to consider whether it was proper to resort to the procedural devices required of public sales, such as petition for confirmation and bond to forestall; the status of an undivided royalty interest; nor whether the decrees here were in every aspect final.

The interest of each minor was an undivided 1/84 or 1 3/7 acres. The consideration for both the lease and the royalty interest was, by a great preponderance of the testimony, within the prevailing price ranges. There being a disclaimer of the chancellor that inadequacy was found, legal fraud was sought in the fact that there was no counsel representing the minors at the several hear-

ings.   Appellant employed an attorney to procure appointment of the guardian and to prepare petitions for lease and sale.  He paid the fees and costs.  The attorney explained to the court that he was representing Corley, and requested the judge to take over the examination. The entire matter was submitted to the special chancellor, who, in his own testimony at the final hearing, professed complete familiarity with the procedure and the subject matter.  He examined the witnesses, and upon the subject of the royalty interest required additional testimony as to values.  The guardian and next of kin approved the transaction and "thought it was a big price."  The great-grandfather who later was instrumental in filing bond to prevent confirmation was then entirely satisfied with the prices paid, which he conceded were higher than he had been able to get for himself.  The special chancellor and the attorney, as well as appellant, testified that they were aware of nothing that had been withheld that was relevant or requisite in estimating values.  The chancellor found, not that appellant had withheld information which he, the appellant, knew, but "which the special chancellor should know."  The trial court found that appellant, in furnishing affidavits of value, "furnished the special chancellor only with affidavits of those parties who agreed with him as to the value of said royalties"; and that "in this he withheld from the special chancellor evidence that it was his duty under the circumstances to furnish to him."  We find no sufficient basis for an inference that there were other affidavits procured or procurable that were unfavorable to appellant, nor that those furnished were corrupt.  Certainly, their recitals were in harmony with a great preponderance of the oral evidence.

No instances of particular facts suppressed are made a basis for the finding of legal fraud except the following: In December, 1943, Cora Bradford had been approached by Mr. Theus, an agent of an oil company who made inquiries regarding the land and the respective ownership

shares. No offer to lease was made by Theus at that time or later. Theus testified that his company already owned a large lease interest in the lands; that he went to Chicago in early February to attend to several matters including an investigation into the marital status of Cora Bradford, and returned early in the morning of February 15th, the day the guardian was appointed. He stated that he would have paid $200 an acre for the lease, which was an advance over the price paid by Corley. There is a contention that facts withheld from the special chancellor included the preparations being made by an oil company to drill an oil well upon an adjoining quarter section; the fact that Corley knew Theus had returned from Chicago and was interested in the lands; and that the company represented by Theus had a lease on a part interest in the lands.

The record does not supply evidence sufficient to establish fraud. It does not disclose that Corley withheld from the special chancellor any information whose suppression worked a deception upon a material matter. For information to be withheld, it must first be held. We do not find that Corley had relevant knowledge of facts whose disclosure would or should have worked a denial of the decree. As stated, Theus never made any offer. He first revealed a willingness to have paid $200 an acre when he was a witness in the hearing on the objections in August. In the meantime, the second well for which preparations were being made in February had been brought in as a producer. We are justified by the record in attributing to Theus some responsibility for the later dissatisfaction of the guardian and the great-grandfather, resulting in objections to confirmation. The grounds of the chancellor's decree, as stated in his written opinion, are so closely knit with the issue of price inadequacy that it is difficult to relate them to fraud when by the opinion a finding of inadequacy is disclaimed.

The test of adequacy is the reasonable value at the time of the sale. In re Hickory's Guardianship, 75 Okl.

79, 182 P. 233; Tucker v. Leonard, 144 Okl. 264, 291 P. 124; 39 C. J. S., Guardian and Ward, Sec. 131, subsec. b, p. 213. As stated in Re Leonis' Estate, 138 Cal. 194, 71 P. 171, 172: "The appellant had become the purchaser of the property subject to the supervision of the court, and certainly had rights which could not be lightly thrown aside or disregarded. He was responsible for the amount of his bid, and might have been compelled to stand by it. Even if the property had depreciated or become valueless after the bid and before the confirmation, this would not relieve him; and, while he had assumed certain obligations as a purchaser, he obtained certain legal rights which are to be as much protected and enforced as the rights of other persons. He became entitled to have the sale confirmed, if there was no valid reason within the law why it should not have been. Dunn v. Dunn [137 Cal. 51], 69 P. 847."

The evidence showed that the value of leases and royalty interests in the vicinity were established by the fluctuating forces of supply and demand, which, though following an eccentric course as is characteristic of a highly speculative activity, is reasonably stablized by those regulatory checks and balances wherein an overextended hope hazards all and a restraining fear is admonished by a diminished certainty. That which is being sold is not a product but a possibility, in the appraisal of which optimism becomes lavish and doubt concedes discount. As skepticism yields to reasonable probability and approaches certainty, it is reflected in a rising scale which is constantly adjusted to the heightened probabilities and a semblance of market values is seen.

Had Theus disclosed his measure of optimism to appellant, or even to others, it would have become an important factor in appraisal. It would not do to take a retrospective look in the light of after-developed facts, and test the fairness of a sale, made under conditions necessarily speculative, by a disparity later disclosed by a revealed certainty. As was held in Tucker v. Leonard,

144 Okl. 264, 291 P. 124, 128: "If a bidder at a public sale of real estate by a guardian under order of court is to be held liable for his refusal to pay the purchase price therefor (he is made liable by section 1284, C. O. S. 1921 [58 O. S. 1941, Sec. 428]), then that bidder is entitled to have the sale confirmed or vacated so that he may have the benefit of his bid, or be relieved from responsibility. To permit the county court to speculate upon oil development or other things tending to increase the value of the property, and continue the hearing of the return of a sale of real estate for a higher and better bid on the property, is to give the county court the authority, at a later date and if subsequent developments have depreciated the value of the property, to confirm the sale to the original bidder and force him to complete the same or become liable for the damage resulting therefrom."

The principle herein stated may well require a different result in another case where the evidence may show that there was an overreaching of those to whose protection the state must keep ever devoted. Fraud may not be shown by a failure merely to disclose information which the court should know, but by a deliberate withholding of facts which the purchaser did know and whose disclosure would have revealed that the minor had been cheated of his rights by means that were unfair and inequitable, and at a value that was then inadequate.

In our opinion the learned chancellor was not warranted in setting aside the decrees for the lease of the minors' interest and the sale of their one-half royalty interest.

Reversed and decree here for appellant.

## PARTIALLY DISSENTING OPINION.

Roberds, J., delivered a partially dissenting opinion.

I concur in the holding that the mineral lease was valid and binding—this for the reason stated in the opinion

that ''Section 415 does not require confirmation of a mineral lease after execution has been authorized,'' and for the further reason that the decree, as to such lease, did not purport to require any report for approval and confirmation, but was final.

But, as to the mineral and royalty deed, whether Section 1389, Code 1942, pertaining to private sales of lands, applies to sales of minerals and royalties or not, the decree in this case expressly required a report to, and approval and confirmation by, the chancery court of such sale. The matter was still in the breast of the court and it had the right not to prove and confirm the sale, specially where, as here, the guardian and the minors were protesting such approval and confirmation.

**Sydney Smith, C. J.**, concurs in this opinion.

ON SUGGESTION OF ERROR.

**Alexander, J.**, delivered the opinion of the Court on suggestion of error.

The suggestion of error questions the accuracy of the following language in our opinion [22 So. 2d 234, 235]: ''The decree for execution of the lease required no report for confirmation'' and ''where there is a private sale or lease upon terms disclosed to, or required by, the court, and thereby approved, the transaction is confirmed by the decree directing it.'' This language was used in connection with the particular facts here involved. We do not hold that report and approval of private sales is unnecessary but that here there was both report and approval. Here, the guardian joined in the petition to approve the transaction on the terms proposed. The sale was consummated pursuant to the prior decree and was reported to the Court on March 24th, 1944. It is our view that the special chancellor had had the matter reported to and approved by him on February 21st when

extended proof was heard, although no objections had then been filed thereto by anyone although the two next of kin of the minors had been duly served with process as required by law. However, the Court in its decree rendered on that date, approving the terms of the sale of one-half of the royalty belonging to the minors and directing that the Chancery Clerk and guardian should execute the conveyance in accordance with the deed then presented, made provision for the report of their action in the premises to the Chancellor in vacation at his office on March 4th, 1944, for confirmation.

Assuming, but not deciding, that the decree above referred to had the effect of requiring the entire matter to be reported for approval at a later date and that the interested parties were entitled to a full hearing on any objections that could properly be filed against the confirmation at such hearing, they were afforded such opportunity at the August, 1944 term of the Court, in full conformity with all provisions relating to public sales. We hold, however, that the evidence adduced thereon was not sufficient to support the finding of the Chancellor refusing to allow the "deed" to "become effective." As stated in the original opinion, inadequacy of price was particularly disclaimed by the Chancellor as a ground for withholding approval but he rested his decision solely upon the ground of fraud as heretofore stated, which conclusion is not, in our opinion, sustained by the evidence.

Counsel invites attention to Chapter 42 of the Laws of 1930, which is substantially the same as Code 1942, Section 1389. However, in the 1930 Act a second section appeared, which is as follows: "This act shall not repeal or amend any other act, but is supplemental and in addition to any other act now in force and effect, relating to sales of real and personal property by decree of the Chancery Court." Through the quoted paragraph counsel reads into the Act all the provisions applicable to public sales. Regardless of the effect of the Act it was repealed by Chapter 327

of the Laws of 1936 and recast in the form now appearing in Code 1942, Section 1389.

Overruled.

PARTIALLY DISSENTING OPINION ON SUGGESTION OF ERROR.

**Roberds, J.,** delivered a partially dissenting opinion on suggestion of error.

No decree was entered by either Chancellor Gillespie or his successor, Chancellor Neville, approving and confirming the sale of royalty. The decree of Chancellor Gillespie dated February 21, 1944, authorizing the sale, required the guardian to report ''her acts and proceedings for confirmation.'' Protests by the minors and their next of kin were filed against such confirmation. They also filed a bond, with approved sureties, obligating themselves to ''pay all costs of the resale and shall start the bidding on the resale at twenty percent (20%) advance on the former sale . . .'' September 8, 1944, a final decree was entered declining to approve the sale. It is true that in the opinion of the chancellor he found fraud had been practiced on Chancellor Gillespie in obtaining the authority for sale February 21st, but he also necessarily found that it was not to the best interest of the minors to make such sale,—at least, he did not find it was to their best interest to do so. Aside from whether this Court has the power to reverse a chancellor on a finding that it is not to the best interest of a minor to sell his property, and thereby require the chancellor to decree such sale against his judgment, or decree the sale ourselves, there is nothing in this record showing it is to the best interest of these minors to make such sale. Indeed, the opinion of the chancellor indicates it would be greatly against their interest to so require. Section 1389, Code 1942, provides that before any deed to land sold at private sale shall become effective, the sale shall be reported to the chancellor ''and an order approving

such sale placed upon the minutes of the court," and in this case the chancellor had by his decree expressly required a report and confirmation of the sale, which confirmation was never obtained.

In addition, Section 1385, Code 1942, provides that the party objecting to a sale "may prevent the confirmation thereof . . ." by making bond conditioned to pay the costs of resale "and that the property shall bring thereat an advance of not less than twenty per centum . . ." As above stated, such bond was made in this case.

**Smith, C. J.,** concurs in this opinion.

ON MOTION TO CORRECT JUDGMENT.

**Alexander, J.,** delivered the opinion of the Court on Motions to correct judgment.

Both parties have filed motions to correct our judgment herein. Appellees insist that our judgment ought to have confirmed the act of the guardian in making and executing the lease instead of confirming the lease. This is what we intended and this is what was done. It is further alleged that the judgment ought to have confirmed the sale of the royalty interest and the act of the guardian in executing and delivering the mineral deed instead of confirming the instruments evidencing such sales. This is what we intended and what was done.

There is additional complaint that since there was both an amended lease and amended mineral deed, execution and delivery of these only should be approved. Although both the originals and the amendments are part of the proceedings, there is no basis for complaint nor confusion in regard to our assumption that the amended instruments and the execution and delivery thereof was authorized and fix the rights of the parties. This was what we intended and what was done.

We reject also the contention that the judgment is ambiguous as to whether the amended royalty deed dated the 8th day of July, 1944 conveyed a one-sixteenth interest of all minerals under the entire one hundred and twenty acres or only such fractional interest in the undivided interest of the minor appellees. Our intention is in accord with the entire purpose of the petition decree, and the deed itself which, as far as the minors are concerned, applied this fraction only to the interest owned by them.

Appellant's motion seeks correction to show a reinstatement of the lease and deed which were cancelled by the final decree dated September 8, 1944. We see no reason to construe our judgment reinstating the decrees which authorized and approved the lease and royalty deed otherwise than an approval of the acts of the guardian in executing them and of the instruments as amended.

We find no occasion to correct our judgment.

Motions overruled.